**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jack D. GREENWOOD, Defendant-Appellant.**

**No. 84–1561.**

United States Court of Appeals, Tenth Circuit.

Feb. 27, 1987.

---

Susan McNaughton, Jones, McNaughton & Blakley, Enid, Okl. (Stephen Jones was also on the brief), for defendant-appellant.

Frank Michael Ringer, Asst. U.S. Atty., Oklahoma City, Okl. (William S. Price, U.S. Atty., and Teresa Black, Asst. U.S. Atty., Oklahoma City, Okl., were also on the brief), for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, LOGAN, Circuit Judge, and CARRIGAN *, District Judge.

HOLLOWAY, Chief Judge.

The defendant Jack D. Greenwood was charged in a two-count information with willfully failing to file federal income tax returns for the years 1974 and 1975, in violation of 26 U.S.C. § 7203 (1982). I R. 12–14. Plea negotiations ensued, and the defendant pled guilty to the second count relating to his 1974 tax return and the Government moved for dismissal of the first count involving his 1975 tax return.

---

* The Honorable Jim R. Carrigan of the District of Colorado, sitting by designation.

The federal magistrate[1] determined that there was a factual basis for the plea, finding the defendant guilty as charged in count two of the information and dismissing the first count. I R. 24–25. Subsequently, the magistrate conducted a hearing to determine the appropriate sentence. At that hearing, the defendant's attorney made a plea for leniency, asking the court to impose only a fine and some type of probation or suspended sentence. III R. 16–18. The magistrate then asked the Government attorney whether she wanted to make a statement. She answered "yes" and commented on the defendant's lack of remorse and the need to deter others from committing the same crime. III R. 18–20.

Defense counsel vigorously protested the remarks, insisting that they constituted a breach of the plea agreement in that the Government attorney earlier handling the case had promised to remain silent at the sentencing proceedings. III R. 20–21. The magistrate then sentenced the defendant to incarceration for six months and entered judgment against him in the amount of $10,723.52 as costs of prosecution. I R. 26–27; III R. 30.

Alleging breach of the plea agreement, defense counsel filed motions before the magistrate for reduction of sentence under Fed.R.Crim.P. 35 and withdrawal of the guilty plea under Fed.R.Crim.P. 32(d). Both motions were denied, and the district court affirmed the conviction and sentence under the theory that the plea agreement only barred the Government attorney from "seek[ing] or suggest[ing] incarceration as a means of sentencing," that her remarks did not suggest incarceration as an appropriate sentence, and that the magistrate independently exercised his option of sentencing the defendant to six months in prison. II R. 228–29.

On this appeal, the defendant argues that the use of an information violated his Fifth Amendment right to be charged by indictment. Alternatively he strenuously contends that the magistrate erred in failing to permit withdrawal of the guilty plea because of the Government attorney's remarks during sentencing. Defendant prays that this court uphold his right to withdraw his plea, or alternatively "specific performance" by resentencing before a different judge, observing the plea agreement; if this court feels it necessary, defendant requests an evidentiary hearing on the plea agreement and breach. Brief of Appellant 38.

We hold that the use of an information did not violate the defendant's constitutional rights but that the prosecutor's remarks did violate the plea agreement. Accordingly, we vacate the judgment and sentence and remand for further proceedings.

## I.

The Government contends that the claim of violation of the plea agreement is not properly before us because the defendant failed to object when the magistrate asked the prosecutor if she had any statement to make, and the defendant failed to properly disclose the alleged promise to the magistrate prior to acceptance of the plea. We disagree.

▄▄▄ We do not think that the defendant's failure to object to the magistrate's question amounted to a waiver of his constitutional right to have the plea agreement properly carried out by the Government. *See United States v. Corsentino*, 685 F.2d 48, 50–51 (2d Cir.1982).[2] As noted, defense

---

1. The defendant in this case consented to trial by a magistrate in accordance with the procedure outlined in 18 U.S.C. § 3401(a) (1982) and 28 U.S.C. § 636(a)(3) (1982). I R. 7. We recently upheld the constitutional validity of this scheme in *United States v. Dobey*, 751 F.2d 1140 (10th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 63, 88 L.Ed.2d 52 (1985).

2. As noted by the Government, the Second Circuit's opinion in *Corsentino* contained the following caveat: "We do not doubt that in some circumstances the impending violation of a plea agreement may be so clearly anticipated that a defendant's failure to object to what is about to happen can fairly be taken to be a waiver of compliance with the agreement." 685 F.2d at 50.

   Nonetheless, we do not feel that the statement supports a finding of waiver in this case. First, the court in *Corsentino* found that the issue of violation of the plea agreement was properly preserved for appellate review even though it

counsel promptly claimed breach of the plea agreement at the conclusion of the prosecutor's statement and in the later motions for reduction of sentence and withdrawal of the guilty plea. Similarly, we reject the argument that the defendant is somehow estopped from raising the issue as a result of his failure to disclose the alleged promise when given the opportunity by the magistrate to make a statement in his own behalf. *United States v. Blackner,* 721 F.2d 703, 708–09 (10th Cir.1983).

## II.

■ We reject the defendant's contention that the use of an information in this case, rather than an indictment, was in violation of his constitutional rights. Under Fed.R.Crim.P. 7(a), a prosecution for violation of 26 U.S.C. 7203 can be initiated by the use of an information and the courts have consistently upheld such a procedure against constitutional attack. *E.g., United States v. Kahl,* 583 F.2d 1351, 1355 (5th Cir.1978).

## III.

While the parties vigorously argue about the meaning of the agreement, there is no dispute about the fact that the first prosecutor's version of what was said was correct. According to his own affidavit, the first Government attorney stated:

> 6. I told [the defendant's attorney] at our conference concerning the plea, that the Government would not indicate to the Court in any manner that Mr. Greenwood should be incarcerated, there would be no official statements made at sentencing to that effect, and we would not do anything behind Mr. Jones's back to signal to the Court in any way that Mr. Greenwood should be incarcerated.[3]

I R. 120; *see* Brief of Plaintiff-Appellee 26–27. The Government's brief before us says that the Government has no evidence to contradict the first prosecutor's affidavit. Brief of Plaintiff-Appellee 27. "Whether the Government's remarks violate the understandings in paragraph 6 of [the first prosecutor's] affidavit is for this Court to decide." Brief of Plaintiff-Appellee 12.

In determining whether the second prosecutor's remarks violated this agreement, we look to what the defendant reasonably understood when he entered his guilty plea. *See United States v. Quan,* 789 F.2d 711, 713 (9th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 16, 92 L.Ed.2d 770 (1986); *United States v. Fields,* 766 F.2d 1161, 1168 (7th Cir.1985) (quoting *United States v. Mooney,* 654 F.2d 482, 486 (7th Cir.1981)); *United States v. Carbone,* 739 F.2d 45, 46 (2d Cir.1984). We also note that "[a] plea agreement is not an appropriate context for the Government to resort to a rigidly literal approach in the construction of language."

was not raised at any point during the sentencing hearing. In contrast, defense counsel here strenuously protested on the basis of the alleged plea agreement as soon as the Government attorney had completed her remarks. III R. 20–21.

Furthermore, we note that the Second Circuit after *Corsentino* has exhibited considerable reluctance to find a waiver of a defendant's constitutional right to execution of his plea agreement. *See United States v. Januszewski,* 777 F.2d 108, 109–10 (2d Cir.1985); *United States v. Burruezo,* 704 F.2d 33, 39 (2d Cir.1983); *Paradiso v. United States,* 689 F.2d 28, 30 (2d Cir.1982) (per curiam), *cert. denied,* 459 U.S. 1116, 103 S.Ct. 752, 74 L.Ed.2d 970 (1983). *But cf. Gammarano v. United States,* 732 F.2d 273, 278 (2d Cir.1984) (alternative holding) (delay of two years, *inter alia,* constituted waiver of a putative plea agreement violation).

3. The Government's brief pointed out that letters which defendant's attorney prepared on the plea agreement contained no reference to the understanding recited in the affidavit. Brief of Plaintiff-Appellee 3. However, as noted, the Government does not dispute the first prosecutor's affidavit as quoted above.

The second Government attorney has informed us in her briefs that she was unaware of these prior statements until after she had completed her remarks at the sentencing hearing. I R. 115; Brief of Plaintiff-Appellee 4. We accept this representation, but are convinced that her lack of knowledge about the agreement is not dispositive. The effect of a broken plea agreement is no less serious when committed in the purest good faith. *See Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) ("[t]hat the breach of agreement was inadvertent does not lessen its impact").

*United States v. Bowler*, 585 F.2d 851, 854 (7th Cir.1978).

In the instant case, the district court found that "the agreement was that the government would not seek or suggest incarceration as a means of sentencing." II R. 228. We feel the court took an unduly literal approach when it concluded that the prosecutor's disparaging remarks at the sentencing hearing did not violate the agreement. The Government attorney who made the agreement conceded that the remarks were "beyond what [he] had agreed." [4] *See United States v. Crusco*, 536 F.2d 21, 26 (3d Cir.1976). Immediately following defense counsel's statement on sentencing, which concluded that "... a fine or a suspended sentence would be appropriate under the circumstances," the second prosecutor stated:

> From the defendant's own statement, he is involved in the tax protesting—protesting the tax system. He states in his statement to the Court that paying taxes is voluntary. I think the Court can see that in this statement there is no remorse, no regret, no recognition that he has broken the law, committed a crime, done anything wrong. No indication that he will not go back to the tax protest movement. And the people that will be watching him and watching what happens to him today, and not say that this is anything he will refrain from in the future. There is no indication that he feels that he was on the wrong track and needs to do something different in the future.
>
> By his own statement, he talks about the government giving aid to unwed mothers and so forth is a justification for how he got into this. He would cite religion and he quotes at length, I believe, from the Bible. And he talks about patriotism and so forth as an excuse. And this is a standard thing in the tax protest movement that they wrap themselves in religion and patriotism as an excuse for law breaking. And there is nothing to indicate that he still—what he believes to be lofty ideals are anything he should change.
>
> I think the Court always does (inaudible) to see, has a person learned anything from this, or is he remorseful. And I think this is a factor.
>
> I think also the Court often looks to how the community will regard the sentence, how will the community regard what happens to this man. There is a lot of people that share the views that there is some—I guess nobody likes paying taxes—and there are others who have followed Mr. Greenwood or have followed the same course he has. And there may be more and more in the future who will take this course. And many of them may be watching to see, is it worth it to risk having the thousands of dollars that you don't pay in taxes, is the risk worth it. For this reason, we would ask the Court to very, very carefully consider the attitude of Mr. Greenwood as expressed in his own statement. And the points we have made today about his lack of recognition that he has done something bad or broken the law or committed a crime, the lack of any regret or remorse other than the fact that the government has finally—and he says himself that he was able to fend off the IRS, and he mentioned many years. And he fended them off. I think it is recognized in the tax protest movement that it does take the IRS many years to handle a case. And he seems proud of the fact that he fended them off.
>
> So we would just remind the Court of the people who will be watching to see if the overhead, if the price that Mr. Greenwood pays for the years of fending off the IRS were worth it to him, or is the gamble great enough that other people should also take it and fail to file tax returns like Mr. Greenwood did.

III R. 18–20.

The sentence cannot stand in light of these remarks. *Mabry v. Johnson*, 467

---

4. The first Government attorney stated: "I have read a transcript of [the second Government attorney's] comments at the sentencing. *Her comments were beyond what I had agreed with [the defendant's attorney] I would state at such proceedings.* I R. 120 (Emphasis added).

U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984); *see Santobello v. New York*, 404 U.S. 257, 262–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971). We recently explained: "Where a plea is predicated in any significant degree on a promise or agreement, such promise or agreement must be fulfilled to maintain the integrity of the plea. Plea bargains, like contracts, cannot normally be unilaterally broken with impunity or without consequence." *United States v. Reardon*, 787 F.2d 512, 516 (10th Cir.1986).

### IV.

In light of our conclusions, we vacate the judgment and sentence and remand the case for further proceedings.[5] The district judge shall determine the remedy which is appropriate in the circumstances, with any hearings deemed necessary—a grant of leave to withdraw the guilty plea or a re-sentencing before a different magistrate who did not hear the comments violative of the plea agreement. *See Santobello*, 404 U.S. at 263, 92 S.Ct. at 499; *United States v. Thomas*, 580 F.2d 1036, 1038 (10th Cir. 1978) ("[a]n unkept promise by the Government in a plea bargaining situation which results in the entry of a plea of guilty in a criminal proceeding may justify either a setting aside of the plea of guilty or a remand for the purpose of compelling specific performance of the Government's promise"), *cert. denied*, 439 U.S. 1130, 99 S.Ct. 1051, 59 L.Ed.2d 92 (1979).

IT IS SO ORDERED.

---

5. Since breach of the plea agreement is established in our record, we conclude we must vacate the judgment and sentence. *See Cohen v.*

*United States*, 593 F.2d 766, 771 n. 13 (6th Cir. 1979).