**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Paul George STEMM,
Defendant–Appellant.**

No. 87–1426.

United States Court of Appeals,
Tenth Circuit.

May 24, 1988.

Rehearing Denied June 7, 1988.

Arnold M. Stone, Haight, Dickson, Brown & Bonesteel, Santa Ana, Cal., for defendant-appellant.

Richard L. Hathaway, Asst. U.S. Atty., Topeka, Kan. (Benjamin L. Burgess, Jr., U.S. Atty., Topeka, Kan., was also on the brief), for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, and SEYMOUR, Circuit Judge, and DUMBAULD, District Judge [*]

---

* The Honorable Edward Dumbauld, United States District Judge for the Western District of

HOLLOWAY, Chief Judge.

Paul George Stemm (Stemm) filed this direct criminal appeal from a judgment of conviction and sentence entered upon his plea of guilty. Stemm was sentenced by the district court in Kansas to imprisonment for two years and fined $10,000.00 for conspiring with eleven codefendants to commit mail fraud in connection with a business venture.

The district court sentenced Stemm on March 18, 1987, along with other defendants. Stemm contends that the court's underlying error is the denial of a motion filed prior to sentencing, on March 10, which claimed a denial of due process and violation of the plea agreement because of the Government having submitted a detailed version of the facts with culpability ratings included in the presentence report for all defendants and strong statements about their conduct. Stemm also claims there was an inaccurate and unreliable presentence investigation report ("PSI/R" or "Report"). These constitutional and contractual flaws, according to the defendant, were caused by the PSI/R being "largely written by the United States Attorney" rather than the probation officer of the court, as required by Rule 32(c)(1) Fed.R. Crim.P. When Stemm read the PSI/R, he immediately sent a letter on February 28, 1987 to the probation office objecting to the entire report. In his followup motion of March 10, Stemm asked that the court order that the report be quashed and expunged, that sentencing be done by a different judge, and that a new PSI/R be prepared.

Subsequent to the sentencing, the court filed a memorandum and order stating reasons why the March 10 motion was denied. Stemm filed this timely appeal. He contends that (1) the United States (U.S.) Attorney's office breached the terms of the plea agreement by writing a prosecution version of the case and a culpability ranking of the twelve defendants which were included in the PSI/R; and (2) the Report was unreliable due to its inclusion of the prosecutor's account which is contrary to

Rule 32(c)(1) and which engendered bias, constituting a denial of due process. The Government contends that neither the U.S. Attorney's office nor the court committed errors which warrant vacating the judgment and granting the relief requested. We affirm.

## I

We first consider Stemm's claim that the United States Attorney's office breached the plea agreement through its participation in the preparation of the prosecution's version and the culpability ranking in the PSI/R.

Where the Government obtains a guilty plea which is predicated in any significant degree on a promise or agreement with the U.S. Attorney, such promise or agreement must be fulfilled to maintain the integrity of the plea. *See e.g. Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971); *United States v. Greenwood*, 812 F.2d 632, 637 (10th Cir.1987); *United States v. Reardon*, 787 F.2d 512, 516 (10th Cir.1986). "Plea bargains, like contracts, cannot normally be unilaterally broken with impunity or without consequence." *Reardon*, 787 F.2d at 516 (citing *United States v. Calabrese*, 645 F.2d 1379, 1390 (10th Cir.1981), *cert. denied*, 454 U.S. 831, 102 S.Ct. 127, 70 L.Ed. 2d 108 (1981)). In considering any claim that the U.S. Attorney has breached a plea agreement, we must first determine the nature of the prosecutor's promise. *United States v. Corsentino*, 685 F.2d 48, 51 (2d Cir.1982).

The plea agreement which Stemm executed with the U.S. Attorney provided that Stemm would plead guilty to one count of mail fraud in return for which the Government would dismiss all other counts. The written agreement was made pursuant to Rule 11(e)(1)(C), F.R.Crim.P. With regard to the guilty plea, the agreement, accepted by the court, limited the sentence that could be imposed to a term "not to exceed two years." I R.Doc. No. 660, Plea Agreement, December 18, 1986, ¶ 3. Additional-

Pennsylvania, sitting by designation.

ly, the U.S. Attorney promised to: recommend that Stemm's term of imprisonment, if any, would not exceed any term of imprisonment imposed upon codefendant Larry Huff, if any; "make no other other recommendation whatsoever as to any other aspect of the sentence to be imposed by the Court," including what specific term of imprisonment should be imposed, the amount of any fine, and any amount of restitution; not object to a request by Stemm for probation; and not oppose applications for voluntary surrender and assignment to any particular facility. *Id.* at ¶¶ 3, 4.

In determining whether there was a breach by the Government of the plea agreement and of the defendant's reasonable understanding when he entered his plea, *United States v. Greenwood,* 812 F.2d at 635, we must consider carefully the information furnished by the Government and included in the presentence report. We have, under seal, the full presentence report whose content and substance we must not discuss in this opinion, but which the panel has thoroughly considered. It will suffice, and not violate the confidentiality of the information, we feel, for us to outline the nature of the information furnished by the Government.

That information appears in a detailed statement which is clearly identified as information that the U.S. Attorney's office provided as the government version of the offense. The information appears in approximately thirteen and one-quarter single-spaced typewritten pages, commencing with a summary of the scheme from its inception several years back and a ranking of the defendants with respect to culpability. This ranking is a principal complaint of the defendant Stemm. In making the ranking of the defendants, the Government says that it considered criteria such as the defendant's contribution to the success of

the scheme and his role in it in several respects. Then in numerical order the Government ranked the defendants as to culpability. Stemm vigorously objects to the assessment of his role. An outline was given of the scheme concerning the product involved and the origin of it in South Africa, and a detailed history of activities of the various defendants including those of defendant Stemm. An outline was also included of brochures containing false representations and false promises which were specified. The statement also included information concerning the very large proceeds of the crime, which the Government had attempted to trace, and the authority over the funds.

Then following the Government's version of the offense, there were sections of the report for which the probation office was apparently responsible. These dealt with pretrial services, the plea agreement, a victim impact statement, and other matters. The report further included a statement of the defendant's version of the defendants' activities, a statement of almost five single spaced typed pages. Lastly, the presentence report contained customary sections concerning any prior record, personal and family data, military service, health, financial condition and assets, and concluding with an evaluation by the probation officer.

In determining whether the U.S. Attorney's office complied with the terms of the plea agreement we must consider the conduct of the prosecutor in the sentence hearing and also the earlier written, presentencing statement, discussed above.[1] The record shows that at the sentencing hearing the Assistant U.S. Attorney recommended that Stemm's sentence not exceed that of codefendant Huff, VII R. 76, 77; in response to the court's inquiry whether the Government wished to address punishment he replied in the negative, *id.* at 86; and he

---

1. The parties have disagreed as to whether the reasonable construction of the plea agreement here concerns the Government's conduct only at the sentencing hearing. We do not find that such a limitation properly addresses the scope of the Government's conduct which must be considered. Each plea agreement must be analyzed on the basis of what the parties themselves

agreed on. *United States v. Benchimol,* 471 U.S. 453, 456, 105 S.Ct. 2103, 2105, 85 L.Ed.2d 462 (1985). The court cannot condone the Government accomplishing through indirect means what it promised not to do directly where the facts so demonstrate. *United States v. Cook,* 668 F.2d 317, 321 (7th Cir.1982).

moved to dismiss the remaining counts of the indictment. *Id.* at 88. The court recommended to the Bureau of Prisons that Stemm's sentence be served at a minimum security institution near his home and that Stemm be allowed a voluntary surrender. *Id.* at 87. The record does not show that the prosecutor in any way addressed the institutional location and surrender. Finally, the court ordered that Stemm's objections to the PSI/R and a transcript of the sentencing proceeding be made part of the defendant's record for the Bureau of Prisons. *Id.* at 88, 89. The Government had not responded to the collaborative argument of the defendants that the prosecutor's version of the offense and culpability rating breached the plea agreement, *see id.* at 5, 22, 27–28, 30, and the record shows no prosecutor response to the court's ordering the objections underlying the legal argument being attached to the defendant's record.

▮ We have carefully considered the conduct of the Government at the sentencing proceeding and in furnishing the "Prosecution Version" of the offense for inclusion in the presentence report. The culpability "Ranking of the Defendants," emphasized by Stemm, presents the most difficult question and Stemm's strongest claim. Information furnished to the probation office here on Stemm is similar to that furnished to the probation office including the Government's view on the defendant's "relative culpability" and the "part each defendant played in the criminal scheme", which was held proper despite a promise to make no recommendation as to sentence in *United States v. Michaelson,* 552 F.2d 472, 475 (2d Cir.1977). Disclosure of information as to the nature of the offense and each defendant's role is proper and within the Government's duty to provide, despite a promise that the Government would make no recommendation as to sentence. *Id.* *See United States v. Needles,* 472 F.2d 652, 655 (2d Cir.1973); *see also Williams v. New York,* 337 U.S. 241, 249–250, 69 S.Ct.

1079, 1084, 93 L.Ed. 1337 (1949) ("To deprive sentencing judges of [probation workers' reports] would undermine modern penological policies ..."). The Government's conduct here was a closer analogue to the disclosure of information upheld in *Michaelson* than to the Government's conduct in *United States v. Greenwood,* 812 F.2d 632 (10th Cir.1987), where, in immediate rejoinder to a plea for a fine or a suspended sentence, the prosecutor made a strong response not suggesting a sentence, but arguing there was a lack of remorse and that people would be watching to see if it was worth the risk to have thousands of dollars not paid in taxes.[2]

The choice of the prosecutor's descriptive mechanism, a ranking, rather than only a prose description using comparative adverbs and adjectives, did not render the description a violation of the plea agreement here. In a complex criminal enterprise with multiple defendants spanning diverse activities across three continents, as occurred in this instance, the ranking is not in and of itself proscribed as a way to give the court the information needed for sentencing. Stemm and his codefendants did not have an explicit agreement in which the Government promised not to deviate from a statement of stipulated facts as to each defendant's unlawful conduct or role in the criminal enterprise. *See United States v. Nelson,* 837 F.2d 1519, 1521 (11th Cir.1988) (Government's statement of facts in PSI/Reports expanded multiple defendants' roles beyond the facts stipulated to in plea agreements).

We do not interpret the culpability information here as an indirect form of sentence recommendation which the plea agreement proscribed. Instead, in compliance with the plea agreement, the prosecutor stated when asked by the court whether he wished to address punishment immediately following an appeal by Stemm's counsel for probation or community service and a recounting of family ties: "No, Your honor."

---

**2.** The instant case is also unlike *United States v. Crusco,* 536 F.2d 21, 25 (3rd Cir.1976). There after a plea for leniency, the Government challenged factual statements by defense counsel

and then argued about "the danger to the community that this man has by being out on the street."

VII R. 86. With regard to Stemm's sentence, the prosecutor stated the recommendation provided in the agreement, that imprisonment, if any, of Stemm not exceed that imposed, if any, on codefendant Huff. *Id.* at 76, 77.[3]

We conclude that there was not a breach of the plea agreement by any or all of the Government's conduct complained of by Stemm. We do observe that such problems and possible misunderstandings could be better avoided by a specific reference in plea agreements to the fact that the Government will be submitting a prosecution version of the offense and, in such multiple defendants' cases, culpability rankings in information to go to the court in presentence reports. In sum, we hold that here Stemm's plea agreement with the Government was not broken.

## II

█ Defendant Stemm argues further that the presentence report was patently unreliable, that its preparation violated 32(c)(1), Fed.R.Crim.P., and that there was such bias in the presentencing procedure that Stemm's due process rights were violated.

We do not agree. The rule does provide that the "probation service" shall make a presentence investigation and report to the court. This provision obviously does not mean that the probation officer must go back and repeat each investigative step which the Government and the defendants have taken. Inclusion of the statements by the Government and by the defendants of their versions of the facts and their investigative information, clearly identified here as to source in the report, was not barred by the rule and could not be. Otherwise critical information concerning such a large-scale scheme as was here involved could not be made available and the result would undoubtedly be to "deprive sentencing judges of this kind of information [which] would undermine modern penological procedural policies." *Williams v. New*

*York,* 337 U.S. at 250, 69 S.Ct. at 1084. *See also* Appellee's Brief, Appendix: The Presentence Investigation Report, Publication 105, Probation Division, Administrative Office of the United States 9, 10 (1984) (Probation officer may obtain prosecutor's and defendant's version of the offense which should be so labeled).

Lastly, we note that the judge rejected consideration of the challenged information and stated that in sentencing, he relied on the defendant's version of the offense in the report, facts asserted by the Government in open court when the defendant changed his plea, and those aspects of both the Government's version of the offense and the remaining portions of the presentence report not challenged by the defendant. VII R. 76, 1 R. Doc. 782 at 18. In light of these statements the challenge of defendant Stemm is untenable. *United States v. Green,* 483 F.2d 469, 471 (10th Cir.), *cert. denied,* 414 U.S. 1071, 94 S.Ct. 583, 38 L.Ed.2d 477 (1973).

Defendant's due process claim and his remaining claims of error are unpersuasive.

## III

Accordingly the judgment and sentence are AFFIRMED. Due to the incarceration of defendant-appellant and time served on the sentence, any petition for rehearing shall be filed within 10 days after the filing of this opinion.

SEYMOUR, Circuit Judge, dissenting.

I agree with much of the majority's thoughtful and well considered opinion. In my judgment, however, the majority underestimates the cumulative effect of the Government's actions. When viewed in totality, I believe that the Government's inclusion of the culpability rankings in the pre-sentence report constituted a breach of the plea agreement. I must therefore respectfully dissent.

---

**3.** Defendant Huff's plea agreement stated that "he may be sentenced to a term of imprisonment not to exceed two years." Defendant Stemm's agreement stated in two places a similar cap.

I agree with the majority that the United States Attorney's Office plays an important role in the preparation of complete and accurate pre-sentence reports. I also agree in general that neither the inclusion in the report of a Government's version of the facts nor a culpability ranking necessarily constitutes a recommendation as to sentence. Plea agreements differ, however, as do the extent and importance of the Government's contributions to pre-sentence reports. The important interests served by the prosecution's participation in the process, and even the Government's duty to provide information to the probation office, simply cannot justify upholding a sentence if the defendant reasonably interpreted the plea agreement to forbid the Government from contributing to the pre-sentence report in a particular fashion. *See United States v. Cook,* 668 F.2d 317, 320 (7th Cir. 1982).

As the majority correctly points out, "[e]ach plea agreement must be analyzed on what the parties themselves agreed on.... The court cannot condone the Government accomplishing through indirect means what it promised not to do directly where the facts so demonstrate." Maj. op. at 638 n. 1. In my view, this is a case where the Government accomplished indirectly through its contribution to the pre-sentence report precisely what it agreed not to do, *i.e.,* convey the message to the court that Stemm should be sent to prison.

The record and the arguments presented to us make clear that the Government knew at the time of the plea agreement the role it would play in preparing the pre-sentence report. Stemm, however, was unaware that the Government intended to rank the defendants as to their culpability. Several factors indicate that Stemm's misunderstanding did in fact exist and was not unreasonable: (1) different districts prepare pre-sentence reports in different ways; (2) Stemm submitted an affidavit asserting that even a former U.S. Attorney in Kansas did not know about the Government's practice of ranking defendants; and (3) Stemm immediately objected when he became aware of the message the Government had indirectly conveyed to the court.

Where the parties have radically different views about the role the Government will play in sentencing under a particular plea agreement, this court has stated that "we look to what the defendant reasonably understood when he entered his guilty plea." *United States v. Greenwood,* 812 F.2d 632, 635 (10th Cir.1987). The plea agreement in this case went much further than simply stating that the Government would make no sentence recommendation. It specifically prohibited the Government from making any recommendation as to any aspect of sentence whatsoever. It also listed a number of particular factors, prefaced by the qualifier "including", that the Government promised not to address. The phrasing of the agreement suggests that the Government was limited in ways not specifically set out in the agreement. The Government also agreed not to oppose probation. A defendant entering such an agreement could reasonably believe that the Government was thereby promising not to take any stand on incarceration. In particular, under this agreement a defendant could reasonably believe that the Government had agreed not to convey its impression to the court directly or indirectly that defendant deserved harsher punishment than other defendants. To conclude otherwise would contradict our reasoning in *Greenwood* that a "plea agreement is not an appropriate context for the Government to resort to a rigidly literal approach in the construction of language." *Id.* To me, the prosecution's statement that Stemm was highly culpable is tantamount to a statement that he deserves punishment as opposed to probation.

The majority does not directly say that Stemm's interpretation of the agreement was unreasonable. It does so indirectly, however, by relying on *United States v. Michaelson,* 552 F.2d 472, 475 (2d Cir.1977) (finding "frivolous" defendant's argument that Government participation in the pre-sentence report breached plea agreement). The instant case, however, is distinguishable. In *Michaelson,* the Government agreed to make no sentence recommenda-

tion, and the defendant objected to the Government's furnishing the probation office "with information the Government had as to the part each defendant played in the criminal scheme." *Id.* Stemm has admitted that if the Government had merely promised to make no sentence recommendation and had simply given its information to the probation office, he would have no meritorious claim of breach. The Government, however, did considerably more here.

As I discussed above, this plea agreement is not fairly characterized as a standard "no recommendation" agreement. More importantly, however, the Government prepared a detailed statement of the facts that it knew would appear in the pre-sentence report, and it preceded the statement by ranking defendants in order of the Government's view of their culpability in the described scheme. The Government placed Stemm at the top of this list. By itself, I do not believe that the Government's submission of its version of the crime constituted a breach of the plea agreement. In my opinion, however, the *combination* of the Government's direct contribution of a highly incriminating statement of the facts and the ranking of Stemm as the most culpable defendant constituted an indirect recommendation that Stemm be sentenced to a prison term and that his sentence be more severe than the other defendants. It most certainly was tantamount to a recommendation that Stemm was not an appropriate candidate for probation.

I would vacate the sentence and remand with instructions to permit Stemm to withdraw his plea or to be resentenced by another judge based upon a pre-sentence report prepared in conformity with the plea agreement.