81 F.3d 173
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Debra Jo HAMILTON, Defendant-Appellant.
 No. 95-3249.
 United States Court of Appeals, Tenth Circuit.
 April 3, 1996.
 
 Before PORFILIO, ANDERSON, and HENRY, Circuit Judges.
 ORDER AND JUDGMENT[1]
 PORFILIO, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Pursuant to a plea agreement, defendant Debra Jo Hamilton pleaded guilty to involuntary manslaughter, in violation of 18 U.S.C. 1112, and received a ten-month sentence. On appeal, defendant challenges only her sentence, contending that the government breached the plea agreement by failing to stand mute on sentence. We agree the government breached the agreement and remand for vacation of the sentence and further proceedings.
 
 
 3
 On June 4, 1994, defendant and her husband, Brinton Hamilton, were hosting a barbecue at their home on the Fort Riley Military Reservation in Kansas. Following an argument between the couple, defendant decided that she was going to leave in the couple's truck, which was parked in their driveway. Mr. Hamilton preferred that she stay. After defendant got in the truck and locked the doors, Mr. Hamilton climbed onto the hood in an effort to prevent defendant from leaving. Defendant backed out of the driveway and drove through the residential section of Fort Riley at speeds of at least thirty to thirty-five miles an hour with her husband still on the hood of the truck. Defendant claims that she was driving to a military police station. Witnesses said that the vehicle ran stop signs and that they heard tires squealing and Mr. Hamilton screaming. After driving a little over three miles, defendant applied the brakes, causing Mr. Hamilton to fall off the hood. Defendant stated that when she saw her husband attempt to get up, she drove away, proceeding to a telephone to call her daughter and then to her daughter's home outside Fort Riley. Her husband died from the injuries suffered from his fall from the vehicle.
 
 
 4
 A grand jury indicted defendant and charged her with second degree murder. Defendant and the government negotiated a plea agreement pursuant to which defendant pleaded guilty to involuntary manslaughter in violation of 18 U.S.C. 1112[2] and the government dismissed the original indictment. In the agreement, defendant acknowledged that "all information in the possession of the government concerning the defendant's involvement in the offense would be made known to the court for the purpose of imposing an appropriate sentence." Appellant's App. at 4. For its part, the government agreed to "stand mute on sentence." Id. In addition, the agreement contained an integration clause stating that it superceded all other agreements and embodied "each and every term of the agreement among the parties." Id. at 5.
 
 
 5
 The Sentencing Guidelines provide a base offense level for involuntary manslaughter of ten for criminally negligent conduct and fourteen for reckless conduct. U.S.S.G. 2A1.4. Application Note 1 to this Guideline section states that
 
 
 6
 "[r]eckless" refers to a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation. The term thus includes all, or nearly all, convictions for involuntary manslaughter under 18 U.S.C. 1112.
 
 
 7
 Application Note 2 describes criminally negligent behavior as conduct grossly deviating from the appropriate standard of care that is not reckless.
 
 
 8
 Without specifically addressing the negligence versus recklessness issue, a probation officer drafted a presentence report stating that the base offense level was fourteen. Defendant filed objections to the presentence report contending that the base offense level should be ten because her actions were negligent but not reckless. The government filed a response to defendant's objections. After considering defendant's objections and the government's response, the probation officer stuck to her recommendation that defendant's conduct be considered reckless. The probation officer included defendant's objections and the government's response verbatim in an addendum to her presentence investigation report, which was furnished to the court.
 
 
 9
 At the sentencing hearing, defendant moved to strike a portion of the government's response. Relying on Santobello v. New York, 404 U.S. 257 (1971), she claimed that the response breached the government's obligation to stand mute on sentence because it argued for a finding of recklessness. The district court rejected defendant's argument:
 
 
 10
 The court finds that the government has not breached the plea agreement in regard to the provision to stand mute on sentence. The statements made in the Addendum to the Presentence Report were made to the presentence report writer as logical inferences from the evidence as it related to the issue of recklessness. The government did in fact stand mute on the issue of an appropriate sentence at the sentencing hearing. The government made no arguments at the hearing and made no objections. The government put on the record, without objection from the defendant, that the defendant knew at the time of the plea agreement that the issue of recklessness would be contested at the presentence report phase, but that it would not contest the conclusion of the presentence report writer....
 
 
 11
 To the extent that any arguments made by the government to the presentence report writer could be construed as a breach of the plea agreement, the court would rule that those arguments had no effect on its selection of the appropriate Guideline level and were not considered by the court.
 
 
 12
 Appellant's App. at 7-8. Agreeing with the probation officer's recommendation that defendant's conduct was reckless, the court found the base offense level to be fourteen. Combined with a two-level reduction for acceptance of responsibility and a criminal history category of I, this provided a Guideline imprisonment range of ten to sixteen months. The court selected the low end of the range and sentenced defendant to five months' imprisonment followed by five months' home confinement with electronic monitoring.[3]
 
 
 13
 On appeal, defendant contends that the government breached the plea agreement by arguing for a finding of recklessness and presenting irrelevant facts showing her deserving of a higher sentence. She also contends that the district court erred in finding her conduct reckless rather than criminally negligent.
 
 
 14
 The government may not breach the terms of a plea agreement that induced a defendant to plead guilty. Santobello, 404 U.S. at 262. Thus, when a defendant has entered into a plea agreement, the court must ensure that she receives what is reasonably due her under the agreement. Though the district court indicated that the government's comments had no influence on the sentence, this would not preclude a remedy if a breach occurred. Id. at 262-63.
 
 
 15
 Whether the government breached the agreement is a question of law that we review de novo. United States v. Cooper, 70 F.3d 563, 565 (10th Cir.1995). To determine whether the government has breached a plea agreement, we must first determine the nature of the government's promise. United States v. Stemm, 847 F.2d 636, 637 (10th Cir.1988). Contract principles generally govern plea agreements, Cooper, 70 F.3d at 565, and we construe the agreement according to what the defendant reasonably understood when she entered her plea, United States v. Hand, 913 F.2d 854, 856 (10th Cir.1990).
 
 
 16
 The parties agree that the agreement allowed, and the law in fact requires, the government to present relevant facts to the court so that its sentencing decision "would not be tainted by incomplete and inaccurate information." Hand, 913 F.2d at 856-57; see also United States v. Jimenez, 928 F.2d 356, 363 (10th Cir.), cert. denied, 502 U.S. 854 (1991); United States v. Block, 660 F.2d 1086, 1091 (5th Cir. Unit B Nov. 1981), cert. denied, 456 U.S. 907 (1982). Thus, the government's promise only precluded it from presenting argument regarding, or trying to influence, the sentence defendant should receive. The parties disagree on whether the agreement precluded argument to the probation officer and on whether the government did in fact argue.
 
 
 17
 The government contends that its comments to the probation officer did not violate the plea agreement because "[t]he agreement to stand mute on sentence related to the government's arguments for a specific sentence before the court at the time of sentencing," Appellee's Br. at 16, such as an upward departure from the Guidelines range, id. at 17. The government contends, as it did at the sentencing hearing, that the parties understood at the time they negotiated the plea agreement that the government considered defendant's conduct reckless.
 
 
 18
 The government and the defendant's attorney agreed that the government would present its information to the presentence report writer on the question, and whatever conclusion the presentence report writer came to concerning that issue would be the last word on the matter as far as the government was concerned.... The defendant understood that the issue of recklessness versus criminal negligence would be disputed at the presentence report level; but, after a decision was made by the presentence report writer, the government would not contest the issue before the court.
 
 
 19
 Id. at 16. It contends that if this were not the parties' intent, "a very specific provision could have been placed in the plea agreement precluding the government from offering argument on this issue at any stage." Id. at 16-17.
 
 
 20
 The problem with the government's contention is that nothing in the agreement reflected this alleged understanding. Obviously, a "very specific provision" could have been placed in the agreement allowing the government to argue to the probation officer in favor of recklessness. In effect, the government is attempting to add a term to the plea agreement, yet it fails to explain how it can do so in the face of the agreement's integration clause barring such unwritten understandings.[4] We see no reason not to enforce the agreement as written and reject the government's effort to supplement the agreement with the parties' unwritten understanding. See United States v. Floyd, 1 F.3d 867, 870 (9th Cir.1993); United States v. Rutledge, 900 F.2d 1127, 1132 (7th Cir.), cert. denied, 498 U.S.875 (1990).
 
 
 21
 The facts here are similar to those in Stemm, where the allegedly improper comments were made in written submissions to the probation office that were subsequently included in the presentence report furnished to the court. 847 F.2d at 638. The government argued that the plea agreement regulated only its conduct at the sentencing hearing. Dismissing that argument, we concluded that "[i]n determining whether the U.S. Attorney's office complied with the terms of the plea agreement we must consider the conduct of the prosecutor in the sentence hearing and also the earlier written, presentencing statement." Id. To do otherwise would "condone the Government accomplishing through indirect means what it promised not to do directly." Id. at 638 n. 1; see also United States v. Goldfaden, 959 F.2d 1324, 1327-28 (5th Cir.1992)(finding breach, under plain error standard, of promise to make no recommendation on sentencing, where government took position on sentencing in four memoranda submitted to probation office even though no indication its position was presented to court); United States v. Cook, 668 F.2d 317, 319-21 (7th Cir.1982)(finding breach of promise not to offer anything in aggravation of defendant's sentence, where government allowed information in its possession to be included in presentence report). But cf. United States v. Avery, 621 F.2d 214, 215-16 (5th Cir.1980)(affirming district court's finding that promise to stand mute at time of sentence did not preclude government from responding to probation officer's request for information), cert. denied, 450 U.S. 933 (1981). Thus, we conclude that under Stemm, we must consider the government's comments to the probation officer in determining whether the government fulfilled its promise.
 
 
 22
 That leaves the question of whether the government's comments were argument that breached the agreement. In responding to defendant's objection to the probation officer's original recommendation of recklessness, the government stated that "[t]he base offense level was properly noted as 14 in the [original presentence report]. The defendant was aware of the risk which was created by her conduct, and chose to disregard that risk." R. Supp. Vol. I at 17. The government then presented a summary of the evidence it contended was "indicative of the defendant's recklessness." Id.[5]
 
 
 23
 The government contends that it kept its promise to stand mute because it did not actually argue. It contends that it merely presented relevant evidence and then added a few comments on the "effect" and "weight" of the evidence, or made a "conclusionary comment" that was a "logical inference" from the evidence. Appellee's Br. at 12. These few comments are plainly argument; indeed, the government's description of its comments essentially defines what argument is. The government "characterize[d]" and "argue[d] the effect of ... the evidence," Hand, 913 F.2d at 856, in an attempt to influence defendant's sentence.[6] This is argument that breaches the government's promise.
 
 
 24
 Santobello requires that a breach of a plea agreement be remedied by either specific performance of the agreement or withdrawal of the guilty plea. 404 U.S. at 262-63; Allen v. Hadden, 57 F.3d 1529, 1534 (10th Cir.), cert. denied, 116 S.Ct. 544 (1995). Defendant requests that her sentence be vacated and that we order her resentenced under the terms of the plea agreement, with the government's promise to stand mute enforced. The government did not request a different remedy. The choice of remedy rests with the court. Allen, 57 F.3d at 1534. We agree that resentencing is the appropriate remedy. We therefore remand the case to the district court for vacation of the sentence and resentencing. The resentencing shall be by a different judge. Santobello, 404 U.S. at 263.
 
 
 25
 Because the issues raised in defendant's other arguments may arise again on remand, we briefly address them. First, she contends that the government's presentation of allegedly irrelevant facts regarding her infidelity to her husband also breached the plea agreement. Though we may question the relevance of some of this evidence, we do not believe that, standing alone, presentation of this evidence breached the agreement. See 18 U.S.C. 3661. Second, she essentially contends that the evidence was insufficient to support a finding of recklessness. We disagree.
 
 
 26
 The case is REMANDED to the district court with instructions to VACATE the sentence and RESENTENCE defendant in light of this order and judgment.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 [2]
 The sole count in the superceding information to which defendant pleaded guilty charged that she "did unlawfully kill Brinton Hamilton, without malice, in the commission of an unlawful act not amounting to a felony, that is by driving an automobile in an unlawful manner; to wit: operating a motor vehicle with a passenger riding on the hood of the vehicle in violation of K.S.A. 8-1576 and 18 United States Code Section 13, all in violation of Title 18, United States Code, Sections 7(3) and 1112." Appellant's App. at 1-2
 
 
 [3]
 The court also ordered defendant placed on one year of supervised release, which included the period of home detention, fined her $3,000, and ordered her to pay a $50 special assessment
 
 
 [4]
 The government refers to extrinsic evidence that supposedly reflects the parties' understanding. We do not see this evidence as expanding or clarifying the phrase "stand mute on sentence." It merely indicates that the government could furnish "information," that is, facts, to the probation officer. The agreement itself specifically allowed "information" to be provided to the court
 We note that the phrase "stand mute on sentence" is hardly a standard of clarity, though neither party argues it is ambiguous. If we knew which party drafted the phrase, we might well construe it against that party. United States v. Massey, 997 F.2d 823, 824 (10th Cir.1993). The government would be well-advised to use clearer terminology in its plea agreements.
 
 
 [5]
 Additionally, following summaries of witnesses' statements regarding defendant's driving with her husband on the hood of the truck, the government stated:
 These witnesses clearly indicate that the defendant's driving on that fatal evening was reckless....
 ... This conduct was not negligent, but instead grossly deviated from the standard of care that a reasonable person would exercise in such a situation.
 Additionally, the defendant left her husband in the middle of the road with a fatal head injury. She failed to summon any medical assistance whatsoever. She claims that she saw her husband get up after he had fallen from the car. After this she sped off fearing that he would physically assault her. The fact is that there is no evidence that she had been physically assaulted that night. There is no question that the defendant and her husband argued, but there is no evidence that there was physical contact. The standard to measure recklessness is correctly cited by the defendant in her objections, but improperly applied. The standard of car[e] is with reference to a "reasonable person," not a reasonable battered spouse, if in fact she was a battered spouse....
 The defense has painted the victim as the sole aggressor in this case, yet on at least one occasion, the victim reported to work with a black eye inflicted by the defendant.... The defendant has also identified several witnesses that will testify to the abuse the defendant received at the hands of [her husband]. The following witnesses would offer a different picture....
 R. Supp. Vol. I at 19-20. The government then presented summaries of witnesses' statements indicating that defendant had been unfaithful to her husband and had flaunted her unfaithfulness in front of him. Id. at 20-23.
 
 
 [6]
 The government contends that defendant did not object to its response to her objections prior to the sentencing hearing. To the extent the government is trying to argue that defendant waived her claim of breach, we find that argument unpersuasive. United States v. Shorteeth, 887 F.2d 253, 255 (10th Cir.1989)