# UNITED STATES COURT OF APPEALS

Filed 6/5/96

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

v.

CORY STRINGFELLOW, also known as
Michael John Fortini,

       Defendant-Appellant.

No. 95-1397
(D.C. No. 93-CR-9)
(District of Colorado)

## ORDER AND JUDGMENT[*]

Before **PORFILIO, HOLLOWAY,** and **LUCERO**, Circuit Judges.

_____

Cory Stringfellow pled guilty to conspiracy to possess with intent to distribute and

to distribute 10 grams or more of Lysergic Acid Diethylamide (LSD) in violation of 21

U.S.C. § 846 and 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  On appeal, Mr. Stringfellow

claims the district court erroneously allowed the government to violate his plea

agreement.  Mr. Stringfellow also argues he was denied effective assistance of counsel.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders
and judgments; nevertheless, an order and judgment may be cited under the terms and conditions
of 10th Cir. R. 36.3.

We affirm the judgment of the district court and dismiss without prejudice the Sixth Amendment claim.

In January 1993, Mr. Stringfellow was arrested and charged in a four count indictment. Count 1 charged him with conspiracy to possess with intent to distribute and to distribute 10 grams or more of LSD in violation of 21 U.S.C. § 846 and 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Counts 2, 3, and 4 charged him with distribution and aiding and abetting the distribution of 10 grams or more of LSD in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2.

Pursuant to a plea agreement, Mr. Stringfellow agreed to plead guilty to Count 1. In exchange, the government promised the remaining counts would be dismissed if the defendant "fully and truthfully cooperate[d] with the Government and law enforcement authorities, which cooperation will include debriefings and truthful testimony before federal grand juries and trial juries whenever called upon or subpoenaed."

The government further agreed to file a U.S.S.G. § 5K1.1 departure motion prior to sentencing, recommending a sentence of imprisonment of 84 months, "[p]rovided that the defendant fully, truthfully, and completely cooperate[d] with the Government and law enforcement authorities." Finally, the government agreed, if the defendant "continue[d] to cooperate," the government would consider filing a motion pursuant to Fed. R. Crim. P. 35(b) within the year. The plea agreement contained a stipulation that defendant's role in the offense would not be considered at sentencing.

On September 16, 1993, the government filed its 5K1.1 motion. The very next day, apparently acting upon a concern for his safety, Mr. Stringfellow fled the country and failed to appear at his sentencing hearing. Although the district court issued an arrest warrant, the defendant eluded capture until March 15, 1995, when he was arrested in Liverpool, England. He waived extradition and returned to the United States where sentencing was rescheduled for June 23, 1995.

On June 14, 1995, the government filed a motion to withdraw its previously filed and pending 5K1.1 motion. That motion was not ruled upon. After hearing testimony at the sentencing hearing, the district court sentenced Mr. Stingfellow to 188 months' imprisonment with 4 years' supervised release.

Mr. Stringfellow now appeals. He contends the district court committed reversible error in allowing the government, in contravention to the plea agreement, to withdraw its motion for departure under 5K1.1 and to argue for an adjustment based upon defendant's role in the offense. He also asserts he received ineffective assistance of counsel.

Mr. Stringfellow contends the government violated his plea agreement by withdrawing the 5K1.1 motion. He asserts the motion, filed one day before his original sentencing date, was appropriate because he had rendered substantial assistance prior to sentencing. He points out the government's original motion stated he had provided substantial assistance in the investigation of others who had committed offenses and had given truthful, complete, timely, and reliable information that was useful and important to

the government in a continuing investigation into the criminal activities of others. Asserting the government conceded these facts by filing the 5K1.1 motion, Mr. Stringfellow argues the government could not withdraw the motion merely because he fled. Mr. Stringfellow contends the 5K1.1 motion was an essential part of his plea agreement and was the major inducement behind his guilty plea. Therefore, he argues, the district court erred in allowing the withdrawal.

In reply, the government contends 5K1.1 motions contemplate future cooperation in addition to cooperation prior to sentencing. According to the government, Mr. Stringfellow's plea agreement required his assistance in continuing investigations, and he failed to provide such assistance because he fled the country. Therefore, the government contends Mr. Stringfellow is not entitled to benefit from the 5K1.1 motion merely because the motion was filed on the day before Mr. Stringfellow's initial sentencing was to have occurred. Additionally, the government argues Mr. Stringfellow's failure to object to the withdrawal of the 5K1.1 motion indicates he agreed the motion was no longer warranted.

We initially observe the district court never ruled upon the motion to withdraw. For a reason not apparent from the record, the court assumed the motion was withdrawn by the time of sentencing and neither side disagreed. In fact, Mr. Stringfellow not only failed to object to the withdrawal, he also failed to point out to the court its erroneous assumption.

Whether the government's conduct violated the plea agreement is a question of law which we review de novo. *Allen v. Hadden*, 57 F.3d 1529, 1534 (10th Cir.), *cert. denied*, 116 S.Ct. 544 (1995). In considering whether the plea agreement was violated, we construe the terms of the plea agreement "according to what [the defendant] reasonably understood when he entered his plea." *United States v. Johnson*, 973 F.2d 857, 860 (10th Cir. 1992) (quoting *United States v. Jimenez*, 928 F.2d 356, 363 (10th Cir.), *cert. denied*, 502 U.S. 854 (1991)). We have stated "[w]here a plea is predicated in any significant degree on a promise or agreement, such promise or agreement must be fulfilled to maintain the integrity of the plea. Plea bargains, like contracts, cannot normally be unilaterally broken with impunity or without consequence." *United States v. Greenwood*, 812 F.2d 632, 637 (10th Cir. 1987) (citations omitted) (quoting *United States v. Reardon*, 787 F.2d 512, 516 (10th Cir. 1986)). Based on the facts presented, we conclude the government did not unilaterally breach the plea agreement and certainly it did not act with impunity.

Mr. Stringfellow argues he cooperated with the government up to the time of sentencing and was thus entitled to the 5K1.1 motion. He admits the plea agreement required him to testify at the trial of his co-conspirator and that he was unavailable to do so. However, he contends this issue is relevant only under Fed. R. Crim. P. 35(b), which he claims governs substantial assistance rendered by a defendant subsequent to sentencing.

Several cases in other circuits support Mr. Stringfellow's contention the 5K1.1 motion applies to assistance provided prior to sentencing. *See, e.g., United States v. Martin*, 25 F.3d 211, 215-16 (4th Cir. 1994) ("[T]he parties concede that ... 5K1.1 grants the sentencing judge the authority to grant a downward departure *only* for substantial assistance provided to the government *prior* to, or at the time of, sentencing."); *United States v. Drown*, 942 F.2d 55, 59 (1st Cir. 1991) ("The language, structure, context, and operation of [5K1.1] leaves little doubt that the guideline provision, section 5K1.1, was designed to recognize, and in an appropriate case to reward, assistance rendered *prior* to sentencing."); *United States v. Howard*, 902 F.2d 894, 896 (11th Cir. 1990). ("Section 5K1.1 is a sentencing tool; at the time of the original sentencing, the court may sentence the defendant below the guideline range on a motion from the government.... Rule 35(b) operates *after* sentence has been imposed.... to reflect substantial assistance rendered after imposition of the initial sentence.").

However, we do not believe these cases apply here. In *Martin* and *Drown*, for example, the government agreed to file a 5K1.1 motion, but attempted to defer the filing of the motion until after it had determined the defendant's cooperation was complete -- sometime after sentencing. On appeal, the Fourth and First Circuits stated the government could not file a 5K1.1 motion subsequent to sentencing. Because the government, at the sentencing hearing of both defendants, agreed the defendants had

rendered substantial assistance, the Fourth and First Circuits held the government had violated the respective plea agreements.

In this case, not only did the government file the 5K1.1 motion in accordance with the agreement, there is no indication it would have withdrawn the motion had Mr. Stringfellow appeared at his original sentencing hearing. Thus, the government fulfilled its part of the bargain, but before the motion could take effect and the contract could be executed, the defendant failed to carry out his part of the bargain. It is unassailable that by absconding Mr. Stringfellow insured he could not be called upon to testify. In so doing, he may have protected his personal safety, but nonetheless he failed to "fully, truthfully, and completely cooperate with the Government and law enforcement authorities."

Moreover, regardless of whether the 5K1.1 motion is relevant to acts that took place prior to the sentencing or applies to subsequent acts as well, we conclude the government was justified in attempting to withdraw the motion. We have no doubt that had the government waited until the day of the original sentencing hearing, it would not have filed the 5K1.1 motion when Mr. Stringfellow failed to appear. Therefore, we conclude the defendant is not entitled to benefit from his flight merely because the government filed the motion one day prior to the hearing, reasonably anticipating Mr. Stringfellow's appearance.

With the bravado borne of quintessential chutzpah, defendant cites *Santobello v. New York*, 404 U.S. 257 (1971), and contends he is entitled to the benefits of a 5K1.1 departure notwithstanding his breach of the plea agreement. According to defendant's theory, *Santobello* says the government's breach entitles him to specific performance of the plea agreement or to withdraw his guilty plea. He stands *Santobello* on its head, however, because the remedy it provides is available only to the blameless defendant who has been subjected to a plea agreement breach by the government. Nothing in the opinion suggests the remedy should be applied to a defendant who has failed to perform the promises he made as consideration for the government's agreement.

Overlooking his own defalcation, Mr. Stringfellow also contends the plea agreement was violated because the government argued at sentencing that the defendant should receive a two-point upward adjustment to his base offense level for his role in the offense. He asserts the government stipulated in the plea agreement there would be no upward adjustment for the part played by the defendant. Therefore, he argues the district court erred in allowing the government to breach the plea agreement.

At the sentencing hearing held on June 23, 1995, Mr. Stringfellow explained his involvement in the LSD operation. In response, the court asked whether he denied a statement made by his co-conspirator, John Stuart, that "[Stuart] had taken several trips out of state for Stringfellow to pick up cash and transport LSD." Mr. Stringfellow answered, "Yes, that is false." The court then asked the government whether it was

prepared to offer evidence on this matter. The prosecutor responded, "I wasn't prepared to address this specifically, but I don't recall Mr. Stuart doing a whole lot for Mr. Stringfellow...." The prosecutor then briefly explained the evidence of the relationship between Mr. Stringfellow and Mr. Stuart.

Exercising caution, the court decided to continue sentencing until July 21, 1995, to permit John Stuart to testify about Mr. Stringfellow's involvement in the LSD scheme. However, at that second sentencing hearing, Mr. Stringfellow agreed to stipulate that if Mr. Stuart were to testify, he would state Mr. Stringfellow's involvement was more extensive than Mr. Stringfellow originally admitted. Based on this evidence, the court, sua sponte, adjusted Mr. Stringfellow's sentence to account for his role in the offense.

Mr. Stringfellow relies on *United States v. Boatner*, 966 F.2d 1575 (11th Cir. 1992), to support his argument that the government breached the plea agreement. In *Boatner*, the defendant agreed to plead guilty in exchange for the government's stipulation that only two ounces of cocaine would be considered for sentencing purposes. However, at the sentencing hearing, the government argued that since the time of the stipulation it had discovered additional information about the defendant and could prove he had participated in a much larger drug transaction. Using the information provided by the government, the district court sentenced the defendant to 8 years' imprisonment. On appeal, the Eleventh Circuit reversed and remanded, holding:

> The solemnization of a plea agreement does not preclude the government
> from disclosing pertinent information to the sentencing court. That rule

notwithstanding, the government can enter into a binding agreement with a defendant to restrict the facts upon which the substantive offense is based. Thus, the plea agreement's stipulation that only two ounces of cocaine would serve as the factual predicate for determining Boatner's sentence obligates the government to strict compliance .... [W]e conclude that the stipulation limiting the amount of cocaine involved in Boatner's offense was violated and the plea agreement breached when the government introduced evidence through the presentence investigation report showing that Boatner's drug dealings had involved over three kilograms of cocaine.

*Id.* at 1578 (citations omitted).

However, the government's actions in ***Boatner*** are distinguishable from the circumstances of this case. Here, the government did not attempt to introduce belatedly discovered information about the defendant. This is not a case where the government discovered facts indicating its prosecutorial discretion was not properly exercised and attempted to recover by reneging on its promise. *See, e.g.*, ***United States v. Cooper***, 70 F.3d 563, 566-67 (10th Cir. 1995). Rather, the government in this case, briefly answered the court's questions after the court received unsatisfactory answers from the defendant. ***See, e.g., United States v. Hand***, 913 F.2d 854, 856 (10th Cir. 1990) ("A promise to 'recommend a reduction' [in defendant's sentence] is not a promise to stand mute in the face of incorrect or misleading testimony offered before the trial court."); ***United States v. Stemm***, 847 F.2d 636, 639 (10th Cir. 1988) ("Disclosure of information as to the nature of the offense and each defendant's role is proper and within the Government's duty to provide, despite a promise that the Government would make no recommendation as to sentence."). Finally, the defendant stipulated to facts sufficient to support the sentence

enhancement and did not contend in the trial court that the stipulation was contrary to the provisions of the plea agreement. We conclude this issue is wholly without substance.

Mr. Stringfellow argues, briefly, he received ineffective assistance of counsel because his attorney failed to request a hearing after the government withdrew its 5K1.1 motion. Trial counsel also did not object to the government's withdrawal of the motion, and therefore failed to preserve the issue for appellate review. Citing the standard used to determine ineffective assistance of counsel set out in ***Strickland v. Washington***, 466 U.S. 668 (1984), Mr. Stringfellow contends these trial "errors" were so serious that his counsel was not acting as counsel. Thus, Mr. Stringfellow argues his Sixth Amendment rights were violated.

The rule in this circuit is that claims of constitutionally ineffective counsel should be brought on collateral review in the first petition filed under 28 U.S.C. § 2255. ***United States v. Galloway***, 56 F.3d 1239, 1242 (10th Cir. 1995). Accordingly, "claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." ***Id.*** at 1240; ***United States v. Coleman***, 9 F.3d 1480, 1487 (10th Cir. 1993), *cert. denied*, 114 S.Ct. 1234 (1994).

Nevertheless, the court will hear on direct appeal some "rare claims which are fully developed in the record." ***Galloway***, 56 F.3d at 1242. Here, Mr. Stringfellow contends the record is sufficiently complete to determine the ineffectiveness claim without further hearing because his counsel's ineffectiveness is clear from the record of

the two sentencing hearings.  However, we have stated, "even if the record appears to need no further development, the claim should still be presented first to the district court in collateral proceedings ... so the reviewing court can have the benefit of the district

court's views."  *Id.* at 1240.  Accordingly, this claim is dismissed without prejudice.


**AFFIRMED**.


**ENTERED FOR THE COURT**


**John C. Porfilio**
**Circuit Judge**