**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kelvin B. SCOTT, Jr., Defendant–
Appellant.**

**No. 05–6082.**

United States Court of Appeals,
Tenth Circuit.

July 31, 2006.

David B. Autry, Oklahoma City, OK, for Defendant–Appellant.

Sanford C. Coats, Assistant United States Attorney (and John C. Richter, United States Attorney, with him on the brief), Oklahoma City, OK, for Plaintiff–Appellee.

Before KELLY, Circuit Judge, HOLLOWAY and EBEL, Senior Circuit Judges.

HOLLOWAY, Senior Circuit Judge.

Defendant–Appellant Kelvin B. Scott, Jr., appeals his sentence imposed following a plea of guilty to one count of transportation of a juvenile in interstate commerce for the purpose of prostitution in violation of 18 U.S.C. § 2423(a). Following the sentencing hearing, the district court sentenced Mr. Scott to 120 months' imprisonment and three years' supervised release. On appeal, Mr. Scott contends that the

district court erred in: (1) retroactively applying *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), in violation of *ex post facto* principles; in (2) applying vulnerable victim and leadership sentencing enhancements under U.S.S.G. §§ 3A1.1(b)(1), 3B1.1(c); and in (3) not analyzing the applicability of these sentencing enhancements under a reasonable doubt standard. He also contends that (4) the district court's sentence of 120 months is unreasonable under *Booker* and 18 U.S.C. § 3553(a); and (5) the government breached the plea agreement and waived any arguments in support of a sentencing increase due to its failure to object to the presentence report (PSR).

We have jurisdiction granted by 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We are convinced that the government did breach the plea agreement with Defendant–Appellant and accordingly we must reverse and remand for resentencing.

## I

As the parties anticipated in the plea agreement, the base offense level was determined to be 19. The defense admitted that two increases were applicable—two levels because the victim was between ages 12 and 16, and four levels because fraud had been used to entice the victim into prostitution. The government agreed to a two level decrease for acceptance of responsibility, resulting in an offense level of 23. That offense level, with defendant's criminal history category of I, resulted in a presumptive guidelines range of 46 to 57 months.

When the presentence report was issued, it adopted these admissions and agreements of the parties. The report concluded that the sentencing range was as anticipated by the parties, 46 to 57 months, because the probation office found no information to warrant any additional adjustments, and no evidence suggesting that a departure in either way would be appropriate. The government did not object to the report, and defendant's only objections were minor. One of defendant's objections was sustained by the court. None of them is at issue now.

The district judge was clearly unsatisfied, and he issued three orders before the sentencing hearing. The first order alerted the parties that the court wanted to consider the possibility of offense level increases for a vulnerable victim and for a leadership role in the offense. The government responded by filing a paper styled "Government's Motion For Upward Departure and Sentencing Memorandum." In this filing, the government advocated offense level increases on the bases suggested by the court—that the victim was unusually vulnerable and that defendant had played a leadership role in the offense—and also argued for an upward departure from the sentencing range resulting from application of the Guidelines. The court's next order came right after *Booker* and invited briefing on that decision, as well as discussing the state of the record and some relevant court decisions on the two adjustments that the judge had brought up in the earlier order. The third of these orders was very brief and merely informed the parties that the judge was considering exercising his newly granted discretion to impose a sentence longer than that which had been calculated under the advisory guidelines.

At sentencing, the court rejected defendant's argument that the *Booker* remedy (Justice Breyer's opinion making the guidelines advisory only) could not be applied to him because of due process *ex post facto* considerations. The court also held that the facts supporting sentence enhancements need only be proved by a preponderance of the evidence. The government produced testimony from the case

agent regarding the offense conduct. The judge then found that the victim was especially vulnerable and that another prostitute had participated in the offense conduct. The latter finding was a necessary predicate for the court's finding that defendant had played a leadership role in the offense. These findings increased the advisory guidelines range from 46–57 months to the range of 70–87 months. The court rejected the government's argument for an upward departure under U.S.S.G. § 5K2.4, finding that the fraud used to inveigle the victim into prostitution had already been taken into account in an admitted offense characteristic.

Even though the judge rejected the government's argument for upward departure under the guidelines, he exercised his discretion under the now advisory guidelines scheme to impose a sentence of 120 months, 38% higher than the top of the adjusted guidelines range.

## II

### A

■ As we demonstrate below, upon consideration of the record of the proceedings concerning the plea agreement, we are convinced that the government breached the plea agreement. It is well settled that we must interpret the agreement according to the defendant's reasonable understanding of its terms. *See, e.g., United States v. Hand,* 913 F.2d 854, 856 (10th Cir.1990); *United States v. Greenwood,* 812 F.2d 632, 635 (10th Cir.1987). The plea agreement provided that based upon "the information that is known to the parties on the date that this agreement is executed, the positions they expect to take at sentencing with respect to the United States Sentencing Guidelines will include" that: (1) the offense occurred before April 30, 2003; (2) the offense involved a commercial sex act and the use of coercion; (3) the victim's age was between 12 and 16

years; and (4) the defendant should receive a 2 level downward adjustment for acceptance of responsibility. App. of Defendant–Appellant at 69–70.

■ Defendant contends that the agreement was breached because the government's agreement to these terms clearly implied that the government would *not* argue for other sentence enhancing factors, or at least that such an inference should be drawn because that was his reasonable expectation from the agreement. We agree that this is the plainly reasonable interpretation of the agreement.

### B

Despite its obligation not to do so, the government did argue for additional enhancements and therefore clearly breached the agreement. Thus, in the "Government's Motion for Upward Departure and Sentencing Memorandum," App. of Defendant–Appellant at 125–134, the government asserted that the especially vulnerable victim enhancement "should be applied, and defendant's sentence should be enhanced accordingly." *Id.* at 132. And the same submission said, as to the application of an enhancement for a leadership role in the offense, that the evidence "shows that defendant was a leader of a criminal enterprise under § 3B1.1(c)." *Id.* at 133. At the sentencing hearing, the prosecutor asserted that "the Court should adjust the defendant's points" to enhance the offense level for the victim's vulnerability and that the offense level also "should be adjusted upwardly" for a leadership role in the offense. (Transcript of Sentencing Proceedings of March 4, 2005 at 69–70.)

The government did reserve the right in the plea agreement to take other positions *if* new facts were developed. But that did not happen, and the government on appeal

does not so contend. Instead, the government argued below in favor of the enhancements that the district judge had suggested *sua sponte*—especially vulnerable victim and leadership role in the offense—and even went beyond that to argue for an upward departure, an argument that the district judge rejected. On appeal, despite the fact that no new facts were developed, the government expressly admits that the prosecutor *did argue* additional positions for the enhancements at the sentencing hearing. Brief of Plaintiff–Appellee at 43 ("The fact that the government took additional positions at the sentencing stage of these proceedings in no way breached the plea agreement.").[1] *See also id.* at 47.

The plea agreement was clearly breached and the sentence before us should not be affirmed. The fundamental and dispositive principle was stated by Chief Justice Burger: "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, *such promise must be fulfilled.*" *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (emphasis added). Further, in fulfilling its promise,

the government "cannot rely upon a 'rigidly literal construction of the language' of the agreement...." *United States v. Hand*, 913 F.2d 854, 856 (10th Cir.1990) (quoting *United States v. Shorteeth*, 887 F.2d 253, 256 (10th Cir.1989)).[2]

## III

### A

We turn to arguments and authorities which are offered as justifications for the government's conduct. The government has argued that its absence of objections to the PSR did not preclude the government from providing the district judge with applicable facts and law, nor was the government barred from arguing for certain enhancements not in the initial PSR. See Brief of Plaintiff–Appellee at 47. However, as noted the government merely reserved the right in the plea agreement to take other positions if new facts were developed, and that did *not* happen. App. of Defendant–Appellant at 70.[3]

We note also that the district judge rejected claims of violation of the plea agreement at the sentencing proceedings of March 4, 2005, stating that the purported

---

1. The government asserts that it was only precluded from making arguments that would conflict with the express provisions of the plea agreement. This position is contrary to the teaching of *Hand* and *Greenwood* that plea agreements must be construed consistently with the defendant's reasonable understanding of the agreement's terms. As noted, the government "cannot rely upon a 'rigidly literal construction of the language' of the agreement...." *Hand*, 913 F.2d at 856.

2. We do not suggest that the government should have ignored the order from the district court for briefing on the additional enhancements. However, the government could have responded without breaching either the plea agreement or its duty of candor to the court by providing accurate answers to the court's queries and explaining its obli-

gations under the plea agreement without expressly arguing for the upward departures.

3. The relevant portion of the plea agreement states:

> However, subject to the terms and conditions of this plea agreement (particularly the conditions concerning [U.S.S.G.] § 1B1.8 set out in paragraph 11), the United States expressly reserves the right to take positions that deviate from the foregoing stipulations, agreements, or recommendations in the event that material credible evidence requiring such a deviation is discovered during the course of the United States' investigation subsequent to the signing of this agreement or arises from sources independent of the United States, including the U.S. Probation Office.

*Id.*

breach by the government "applies only to the factual narrative in the PSR ... which does not apply with respect to the probation officer's conclusion as to the applicability of possible enhancements." (App. of Defendant–Appellant at 180.) In other words, the district judge said that the government could respond to the judge's request because he was *not* contemplating any supplementation of the facts underlying the decisions to be made. The judge had explicitly asked for advocacy. On appeal the government repeats what the district judge said at the sentencing hearing. Moreover the government asserts that it was not precluded from arguing for the additional enhancements:

> [T]he government's absence of objections did not preclude it from providing the district court with the applicable facts and law, *and arguing for sentencing enhancements not contained in the original PSR.*

Brief of Plaintiff–Appellee at 47 (emphasis added). Thus, the government admits arguing for the additional sentencing enhancements which was a clear violation of the implicit obligation of the government not to do so.

We are also persuaded by the analysis in *United States v. Allen,* 434 F.3d, 1166 (9th Cir.2006), which is quite similar to *Hand* in the circumstances and disposition of the issue of whether the prosecution breached the plea agreement. As in *Hand,* the prosecutor in *Allen* scrupulously abided by the terms of the agreement, supplying factual information to the court on request, but adhering to her agreement to recommend a certain offense level in spite of additional facts which would have supported a higher offense level. The Ninth Circuit cautioned that an attempt to influence the sentencing judge to impose a higher sentence than the government had agreed to recommend in a plea agreement would have violated the agreement. *See also United States v. Ahn,* 231 F.3d 26

(D.C.Cir.2000), where the prosecutor was careful not to argue for an enhancement in responding to the district court's request for information.

In sum, we are persuaded that under the principles of *Santobello* and its progeny we must reverse and remand for resentencing since the fault rests on the government. *See Santobello,* 404 U.S. at 263, 92 S.Ct. 495.

Since we must reverse on this basis, we do not reach other issues.

**IT IS SO ORDERED.**

KELLY, Circuit Judge, dissenting.

The court holds that the government breached its plea agreement with Mr. Scott by discussing two sentencing enhancements after being specifically directed to do so by the district court. The court reasons that because no new facts were developed after the plea, the government was precluded from arguing any additional positions in favor of enhancements. Prop. Op. at 7. Because this reasoning is supported by neither the applicable law nor the record, I respectfully dissent.

*Background*

Context is necessary to understand what transpired in this case, as well as why the district court felt that a stiff sentence was appropriate. In 2002, federal law enforcement authorities began an investigation into a ring of child prostitution in various areas of the country, including central Oklahoma. One of the individuals apprehended in this operation was Mr. Scott, who was a pimp operating primarily out of Oklahoma City. His operation utilized both adult and juvenile prostitutes, and he also operated in Amarillo, Texas. Aplt.App. at 106–08.

According to the investigation, a 13 year old girl, identified as S.H. or "Strawberry," ran away from her home in approximately

January 2003. While walking in Oklahoma City, S.H. was approached by a vehicle driven by Mr. Scott. An unidentified female, known as "Obsession," who was also Mr. Scott's most experienced prostitute, was also in the vehicle. Mr. Scott and Obsession asked S.H. whether she drank alcohol and smoked marijuana. After S.H. responded in the affirmative, they showed her a bottle of alcohol that was in the vehicle. Mr. Scott asked S.H. if she was interested in living "a better life," and promised her "nice clothes and money in [her] pocket." Mr. Scott told S.H. that they were going to go to a nearby apartment to "party." *Id.* at 98. At some point, S.H. apparently informed Mr. Scott and Obsession that she was 13 years old.[1]

Despite telling S.H. that they were going to a party in Oklahoma City, Mr. Scott drove the vehicle onto Interstate 40 in the direction of Amarillo, Texas. By Mr. Scott's own admission, S.H. did not know that they were going to Texas. *Id.* at 97–99. Apparently, S.H. became nervous about the change in circumstances, but Mr. Scott calmed her by telling her they were going to Amarillo to visit Obsession's mother. Once they arrived, though, Mr. Scott informed them that they were going to be stationed as prostitutes at a truck stop. Because Obsession was the most experienced, Mr. Scott gave her money and instructed her to help S.H. procure some appropriate clothing. *Id.* at 108.

Upon arrival, Mr. Scott turned the two females out to start working at truck stops. S.H. worked each day from around 9:00 in the evening until 3:00 the following morning.[2] S.H. was instructed that she must return each night with $500 to $1000—all given to Mr. Scott—in order to keep "her pimp happy."[3] After a week, the three returned to Oklahoma City, whereupon Mr. Scott commanded that S.H. start working again. S.H. left Mr. Scott's employ that night.

On May 5, 2004, Mr. Scott was indicted on two counts. On June 1, 2004, a four count superseding indictment charged Mr. Scott with: (1) transportation of an adult, identified as K.S., in interstate commerce for the purpose of prostitution in violation of 18 U.S.C. § 2421; (2) transportation of a juvenile, S.H., in interstate commerce for the purpose of prostitution in violation of 18 U.S.C. § 2423(a); (3) trafficking of a juvenile, S.H., in interstate commerce in violation of 18 U.S.C. § 1591(a); and (4) trafficking of a juvenile, identified as B.U., in interstate commerce in violation of § 1591(a). On August 9, 2004, before the Supreme Court's issuance of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), Mr. Scott pled guilty to count 2.

The PSR calculated Mr. Scott's total offense level at 23, with a criminal history category of I. Aplt.App. at 116. This produced a sentencing range of 46 to 57 months. The statutory maximum sentence under 18 U.S.C. § 2423(a) as of the time of Mr. Scott's conviction was 15 years. After

---

1. It is unclear whether Mr. Scott was informed of it at the time he enticed S.H. into the vehicle, but FBI Special Agent Beaver testified at the sentencing hearing that S.H. was involved in intravenous drug use, possibly injecting methamphetamine. *See* Aplt. App. at 183–84, 243. Furthermore, S.H. had psychological and mental problems, which included cutting herself and other forms of self-mutilation. *Id.*

2. S.H. was instructed to, and did, charge the men $40.00 for oral sex, $60.00 for sexual intercourse, and $90.00 for both. Aplt.App. at 108.

3. A prostitute is required to surrender all of the money earned; if she does not, she is guilty of "cuffing." Further, the prostitute must unquestionably obey her pimp and show him respect; if she does not, she is "out of pocket." *Pipkins*, 378 F.3d at 1286.

*Booker* was issued, the district court held a sentencing hearing, which included the taking of evidence. The district court determined that two additional enhancements to Mr. Scott's sentencing guideline calculation were proper. The court found that S.H. was an unusually vulnerable victim, and as such, under § 3A1.1(b)(1), Mr. Scott should receive a two-level enhancement. *Id.* at 253–58. Next, the court determined that Mr. Scott played a leadership role in the crime, and as such, under § 3B1.1(c), Mr. Scott should receive another two-level enhancement. *Id.* at 258–60. Following these enhancements, Mr. Scott's guideline range was 70 to 87 months. *Id.* at 261. The government's motion for an upward departure based upon abduction of the victim, U.S.S.G. § 5K2.4, was denied. Aplt.App. at 252. Given a now-discretionary guidelines system, the district court sentenced Mr. Scott to 120 months. The district court remarked that the guidelines were a moderating factor, without them the court would have sentenced Mr. Scott to the statutory maximum.

### Analysis

Mr. Scott contends that the government breached the plea agreement by supporting the two enhancements discussed above and moving for an upward departure. When the government obtains a guilty plea predicated in any significant degree on an agreement with the prosecutor, that agreement must be fulfilled in order to maintain the integrity of the plea. *See Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). But a promise to recommend a particular sentence is not a promise that the prosecutor will stand mute when the district court seeks factual information.[4] *See United States v. Hand,* 913 F.2d 854, 856 (10th Cir.1990); *see also United States v. Allen,* 434 F.3d 1166, 1175 (9th Cir.2006).

In this circuit, we apply a two-part analysis in order to determine whether the government has breached the plea agreement: (1) we examine the nature of the promise made by the government; and (2) we assess this promise against the backdrop of the defendant's reasonable understanding of that promise at the time that the plea was entered. *United States v. Brye,* 146 F.3d 1207, 1210 (10th Cir.1998). Because general contract principles inform the inquiry, we consider the express terms of the agreement and we construe any ambiguities therein against the drafter— i.e., the government. *Id.*

The government's broadest argument— that the plea agreement is not exhaustive and thus it can still argue for various enhancements and an upward departure— appears rather disingenuous. But despite this panel's rejection of that argument, I would hold that no breach of the agreement occurred in this case.[5] Quite simply,

---

4. The premise of the court's opinion, that the district court sought only legal argument, and not factual information, is not only counterintuitive (given the largely factual nature of enhancements), but also completely contrary to the district court's briefing order:

   Both of the possible adjustments which are discussed above involve factual matters which may not be fully discussed in the [PSR] and which may be controverted to some degree. At sentencing, the parties shall be afforded the opportunity to present any evidence they may have, not inconsistent with the factual portions of the [PSR]

as to which no objections were lodged, which may have a bearing upon the court's determinations as to the applicability of the adjustments discussed above.

Aplt.App. 124.

5. The plea agreement provides:

   7. Based upon the information that is known to the parties on the date that this agreement is executed, the positions they *expect* to take at sentencing with respect to the United States Sentencing Guidelines will include the following:

   (A) The offense occurred before April 30, 2003.

the district court, upon review of the plea agreement and after conducting a plea hearing, ordered the parties to submit memoranda on the potential applicability of these two sentencing enhancements. Next, the district court asked the prosecution to examine Agent Beaver as to the factual background of this case as it related to the two enhancements. The government had no alternative but to fulfill its duty to insure that the sentencing court had complete and accurate information concerning the defendant to enable the imposition of an appropriate sentence. *See United States v. Block*, 660 F.2d 1086, 1091 (5th Cir.1981). By entering into a plea agreement, the government did not agree to refuse to truthfully respond to the district court's requests for factual information. *Allen*, 434 F.3d at 1175; *United States v. Maldonado*, 215 F.3d 1046, 1052 (9th Cir.2000) ("[A] plea agreement does not bar the government from honestly answering the district court's questions. To the contrary, honest response of the government to direct judicial inquiry is a prosecutor's professional obligation that cannot be barred, eroded or impaired by a plea agreement.").

The court's opinion contends that the pertinent cases involve prosecutors that "scrupulously abided by the terms of the plea agreement" and therefore, Mr. Scott's case is quite different. Prop. Op. at 9. All of these cases involve instances where the prosecutor either cross-examined the defendant or otherwise presented evidence

or argument at sentencing, and on appeal the defendant made serious arguments that the plea agreement was breached. In holding that the government had not breached the plea agreement, these courts looked to what the plea agreement contained and what it did not. The degree of latitude afforded must have some reference to the actual agreement. Here, the prosecution had not agreed to recommend a certain base offense level, *Maldonado*, 215 F.3d at 1048, or to jointly recommend a total offense level, *Allen*, 434 F.3d at 1166, or to recommend a downward adjustment that later became an issue in the case, *Hand*, 913 F.2d at 855, or to take no position on whether a particular sentencing enhancement should be applied, *Ahn*, 231 F.3d at 30. Regardless, in all of these cases, the courts recognized the prosecutor's responsibility to provide the court with truthful and accurate information so as arrive at the correct sentence. That premise certainly applies here where the government was requested by the court to comment on the sentencing enhancements contemplated by the court.

The government did provide a court-requested sentencing memorandum favoring the two enhancements in approximately two of the nine pages provided to the court. This does not qualify as the sort of zealous advocacy found impermissible in other contexts. Indeed, the government's sentencing memorandum served a useful purpose, not prohibited by the plea agreement—the provision of court-ordered legal

---

(B) The offense involved a commercial sex act and the use of coercion.
(C) The offense involved a victim who had attained the age of twelve (12) but had not attained the age of sixteen (16).
(D) The defendant should receive a 2–level downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1(a), if he commits no further crimes and fully complies will all of the other terms of this agreement.

The parties have entered into this plea agreement under the provisions of Rule 11(c)(1)(B). Defendant acknowledges and understands that the Court is not bound by, nor obligated to accept, these stipulations, agreements, or recommendations of the United States or defendant.
Aplt.App. at 69–70 (emphasis supplied).

and factual information—which is an essential function of the government at sentencing. *See United States v. Riera*, 298 F.3d 128, 135 (2nd Cir.2002). On the other hand, the government's request in the sentencing memorandum for an upward departure pushes the envelope, but regardless, the court denied the motion for upward departure and as a result, the defendant sustained no injury. *See United States v. Belt*, 89 F.3d 710, 713 (10th Cir. 1996) (holding breach harmless where remand would be fruitless); *United States v. Easterling*, 921 F.2d 1073, 1080 (10th Cir. 1990) (holding that "any breach by the Government that may have occurred is immaterial in light of the district court's handling of the matter").

While a unilateral attempt by a prosecutor to influence the district court into imposing a higher sentence than that expressly contemplated by the plea agreement could potentially violate the agreement, that simply was not the case here. To the contrary, the government responded to the district court's specific request for information relevant to the potential sentencing enhancements and did not argue for either enhancement of its own accord. Mr. Scott cannot point to anything in the plea agreement that bars the government from responding to the court here, because there is no such provision. Indeed, "where—as here—the Government incorporates into the plea agreement an integration clause expressly disavowing the existence of any understandings other than those set forth in the plea agreement, a defendant may not rely on a purported implicit understanding in order to demonstrate that the Government is in breach." *United States v. Lenoci*, 377 F.3d 246, 258 (2nd Cir.2004) (citing *In re Altro*, 180 F.3d 372, 376 (2d. Cir.1999)).

This court's emphasis on the defendant's reasonable understanding of the plea agreement is incomplete. Prop. Op. at 5.

That understanding must be informed by the terms of the government's agreement. The court's interpretation of that agreement is unreasonable, because, despite its insinuation to the contrary, the defendant's understanding of the agreement's terms is not dispositive for our purposes. The plea agreement lacks any language related to these particular sentencing enhancements, lacks any language forbidding the prosecutor from responding to requests by the district court, and it similarly lacks any language prohibiting the presentation of evidence when it is requested. Aplt.App. at 76 ("The United States reserves the right to inform the Probation Office and the Court of ... the nature and extent of defendant's activities with respect to this case...."); *Id.* at 67–77; *See Allen*, 434 F.3d at 1175 (noting that, as was the case here, the "plea agreement contained no provision forbidding the prosecutor to respond to requests by the district court or to present evidence when specifically requested to do so [and] there [is no] suggestion at all in this record that the prosecutor was in any way responsible for encouraging the probation officer to include a higher offense level recommendation than was contained in the plea agreement, or that she induced the district court to pursue that recommendation."); *Hand*, 913 F.2d at 856–57; *United States v. Ahn*, 231 F.3d 26, 38 (D.C.Cir.2000) (noting that the prosecutor's questions for the witness only provided the factual material for the district court to apply an enhancement).

The plea agreement says **absolutely nothing** about responses to court-ordered advocacy related to the potential relevance of these sentencing enhancements. As the cases demonstrate, the terms of plea agreements vary from specific sentences, *see* Fed.R.Crim.P. 11(c)(1)(C), to recommendations concerning offense levels and enhancements. This court should not re-

make the parties' agreement based upon unexpressed subjective intentions. Moreover, the district court is not bound by the plea agreement, and as such, it is surely entitled to order additional briefing on materials it deems relevant to the sentence. Fed.R.Crim.P. 11(c)(3); Aplt.App. at 70, 76.