**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 15, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

NICHOLAS MENDOZA,

Defendant - Appellant.

No. 05-4299

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. NO. 05-CR-051-01-PGC)**

---

D. Bruce Oliver, D. Bruce Oliver, L.L.C., Salt Lake City, Utah, for Defendant - Appellant.

Karin M. Fojtik, Assistant United States Attorney (Stephen J. Sorenson, United States Attorney, with her on the brief), Salt Lake City, Utah, for Plaintiff - Appellee.

---

Before **KELLY**, **BEAM**,[*] and **HARTZ**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

[*]The Honorable C. Arlen Beam, Senior Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

Nicolas Mendoza was indicted in the United States District Court for the District of Utah on a charge of possession of methamphetamine with intent to distribute, *see* 28 U.S.C. § 841(a)(1). He pleaded guilty to the charge but reserved his right to appeal the denial of his motion to suppress the evidence seized from his motor vehicle. On appeal he challenges that denial and also contends that the district judge should have disqualified himself from the case, that the government breached its plea agreement by instituting civil forfeiture proceedings against his vehicle, and that he is entitled to a reduction in his sentence as a mere "minor participant" in a larger drug scheme. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

I.    BACKGROUND

Viewing the evidence at the suppression hearing in the light most favorable to the district court's ruling, *see United States v. Lopez*, 437 F.3d 1059, 1062 (10th Cir. 2006), we summarize the pertinent events as follows: On January 8, 2005, Utah State Police trooper Nick Bowles observed two recent-model SUVs that appeared to be traveling in tandem, about one car-length apart, on Utah Highway SR-191 near Moab, Utah. One had a Minnesota license plate; the other, an Arizona plate. The sole occupant of each vehicle was a young male. Bowles's experience suggested that the drivers were possibly involved in drug trafficking or auto theft. When he made a u-turn to follow the vehicles, they promptly pulled into a service station. He continued on but then stopped by the side of the road to

await their approach. They passed him again, and he resumed following them. When Mr. Mendoza's vehicle, a 2000 Ford Excursion, failed to stop at a stop sign, Bowles pulled him over. A Moab police officer, who had been contacted by Bowles, stopped the other vehicle for following too closely.

As Mr. Mendoza rolled down his car window, Bowles noticed a strong odor of air freshener and observed two unusually placed air fresheners—one near an air vent and one attached to a seatbelt hold in the backseat. Bowles asked for driver and vehicle information. Mr. Mendoza provided his Minnesota driver's license and, while looking through the glove box, said that the vehicle belonged to a friend. When he found the title, he presented it, his hands trembling, to Bowles. The title was in Mr. Mendoza's name. He then said that he was buying it from a friend. Asked when he bought the vehicle, he responded that the purchase was on December 10 or 11, although the date on the title was December 20. He said that he had paid $12,000, which seemed low to Bowles. Later Mr. Mendoza said that he had purchased the vehicle from "a Mexican" whose name he could not remember. R. Vol. II at 264.

During this time Bowles had radioed the dispatcher for confirmation of the validity of the license and title. While Bowles awaited a response, Mr. Mendoza volunteered that he was returning from visiting his father in California. He claimed to have traveled east to Flagstaff and then north through Utah, a route that made no sense to Bowles because it entailed unnecessary travel in the Rocky

Mountains during the winter. Mr. Mendoza denied that he was traveling with anyone else. After Bowles was informed that the driver's license was valid and the vehicle was not stolen, he told Mr. Mendoza that he was free to leave. Bowles then asked a few more questions, which Mr. Mendoza answered. But when Bowles requested permission to search the car, Mr. Mendoza refused.

At that point Bowles informed Mr. Mendoza that he was not free to leave and that he was being detained until a dog could arrive to inspect the vehicle. The nearest handler was in Monticello, about 50 miles away. Bowles promptly called for a dog and conveyed the urgency of the situation to the handler. The dog and handler arrived 40 minutes later. The dog alerted to the rear door on the driver's side of the Excursion, near the gas tank. Bowles then searched the car, finding methamphetamine in the gas tank. He arrested Mr. Mendoza, who was indicted in federal court on January 26, 2005.

In March 2005 Mr. Mendoza filed a motion to suppress the evidence found by Trooper Bowles. The motion was denied. In July Mr. Mendoza agreed to plead guilty to possession of methamphetamine with intent to distribute, but he reserved his right to appeal the denial of his suppression motion. On September 14 he brought a motion to disqualify Judge Cassell, claiming an appearance of impropriety on the part of the judge because of the judge's referral of Mr. Mendoza's attorney to disciplinary authorities three weeks earlier. The motion was denied.

Meanwhile, on September 12 the government had filed a motion for criminal forfeiture of Mr. Mendoza's 2000 Ford Excursion. At a hearing on October 19 Mr. Mendoza's attorney contended that forfeiture would be a breach of the plea agreement, which made no mention of forfeiture. The government responded that the absence of any reference to forfeiture in the agreement left the government free to pursue forfeiture and that if the agreement prohibited a forfeiture, Mr. Mendoza's sole remedy would be to withdraw his plea. It also noted that earlier in the day it had filed a civil forfeiture action, which had been assigned to another judge. Mr. Mendoza's attorney reiterated his objection to the forfeiture but rejected the notion of withdrawing the plea. Judge Cassell asked whether it would be a "major inconvenience" for the government to rely on the civil proceeding. R. Vol. II at 359. When the government answered that it would not, Judge Cassell pronounced that "there is no forfeiture of the vehicle in this case." *Id.* at 360. Mr. Mendoza protested that civil forfeiture would also breach the agreement. But he rejected Judge Cassell's suggestion that the civil-forfeiture case be consolidated with the criminal case. Because that case was pending before another judge, Judge Cassell issued no ruling on the civil forfeiture, nor was he asked to.

At sentencing in November 2005 Mr. Mendoza argued that he was merely a "minor participant" in the drug offense and was therefore entitled to a reduction

in his offense level under the United States Sentencing Guidelines (USSG). The district court rejected the argument and sentenced him to 168 months in prison.

## II.  DISCUSSION

### A.  Suppression of Evidence

Mr. Mendoza argues that the evidence against him should have been suppressed by the district court because it was recovered in violation of the Fourth Amendment's protections against unreasonable searches and seizures. He further contends that Bowles was obligated under state law to obtain a telephonic warrant while he waited for the dog to arrive. We review de novo the district court's legal conclusions and its ultimate holding of reasonableness under the Fourth Amendment, but we accept the district court's findings of fact unless clearly erroneous. *See United States v. Caro*, 248 F.3d 1240, 1243 (10th Cir. 2001).

The state-law claim can be disposed of summarily.

> [I]n federal prosecutions the test of reasonableness in relation to the Fourth Amendment protected rights must be determined by Federal law even though the police actions are those of state police officers. . . . Therefore, the fact that the arrest, search, or seizure may have violated state law is irrelevant as long as the standards developed under the Federal Constitution were not offended.

*United States v. Le*, 173 F.3d 1258, 1264-65 (10th Cir. 1999) (internal quotation marks, citations, and brackets omitted); *see United States v. Bach*, 310 F.3d 1063, 1066 (8th Cir. 2002) ("[F]ederal courts in a federal prosecution do not suppress

evidence that is seized by state officers in violation of state law, so long as the search complied with the Fourth Amendment.").

Mr. Mendoza's arguments under the Fourth Amendment also fail. We begin by stating what we need not resolve. Although at oral argument before this court Mr. Mendoza challenged the existence of reasonable suspicion for his detention until the dog arrived, he did not adequately raise this argument in his brief in chief. Two portions of his brief are relevant: Point I, entitled "The Government Must Show That a Warrant Was Not Practical While Awaiting 40 Minutes For a K-9 Drug Dog To Arrive," Aplt. Br. at 34, and Point III, entitled "The Trooper's Conduct was Exploitative of the Stop and the Detention was Unlawful," *id*. at 44. (Point II discusses his state-law argument, and Points IV, V, and VI do not address search-and-seizure matters.) On the second page of the four-page discussion under Point I, the brief states, "Defendant believes that Trooper Bowles lacked probable cause to detain Mr. Mendoza for 40 minutes." *Id*. at 35. There is no assertion that reasonable suspicion was lacking. As for Point III, although its thrust is uncertain, its focus appears to be that the search was an exploitation of the unlawful detention. The section concludes: "[Trooper Bowles] exploited the stop in order to detain Mendoza longer in order to search his vehicle 'whether he liked it or not.'" *Id*. at 47-48. We can find no argument in Point III challenging the existence of reasonable suspicion. Perhaps one might discern such an argument in the reply brief. But that is too late to raise an

appellate issue. *See United States v. Murray*, 82 F.3d 361, 363 n.3 (10th Cir. 1996). And even if it were not too late, the reply brief is far from clear; it says:

> In summation, Trooper Bowles' testimony did not rise to probable cause as it needed to be. The facts surrounding the admitted seizure of Mr. Mendoza required probable cause while awaiting the drug-detection dog rather than merely reasonable suspicion contrary to Trooper Bowles' erred belief [which] is perpetuated as the Government's position stated in [its] brief . . . .

Aplt. Reply Br. at 15. Before we deem ourselves obligated to address an issue, appellate counsel must present the issue to us with some degree of clarity, certainly with more clarity than any reasonable-suspicion issue is raised in Mr. Mendoza's brief in chief.

We now turn to the first Fourth Amendment issue raised by Mr. Mendoza on appeal—whether the 40-minute detention was unlawful absent probable cause. We hold that probable cause was unnecessary. Officers with reasonable suspicion to believe that the occupants of a vehicle are engaged in the unlawful transportation of contraband may detain the vehicle for a reasonable time to obtain a properly trained dog to sniff for contraband. Given the distance between the scene of the detention and the nearest handler, as well as Trooper Bowles's diligence in promptly calling the dog handler and the handler's speedy arrival, a 40-minute detention was reasonable. *See United States v. Santos*, 403 F.3d 1120, 1124, 1134 (10th Cir. 2005) (22 minutes); *United States v. Villa-Chaparro*, 115 F.3d 797, 802-03 (10th Cir. 1997) (38 minutes).

Because the 40-minute detention was lawful, we reject Mr. Mendoza's Point III, which is that Trooper Bowles exploited the stop. There is nothing improper about law-enforcement officials "exploiting" lawful investigative measures.

Mr. Mendoza's final challenge to the search and seizure is that Trooper Bowles had probable cause to search only the portion of the vehicle where the dog alert occurred, not the entire vehicle. This circuit has previously rejected this argument. In *United States v. Rosborough*, 366 F.3d 1145, 1153 (10th Cir. 2004), we wrote: "A dog alert creates general probable cause to search a vehicle; it does not implicate the precision of a surgeon working with scalpel in hand." Mr. Mendoza relies on a footnote in *United States v. Seals*, 987 F.2d 1102, 1107 n.8 (5th Cir. 1993), in which the Fifth Circuit distinguished between dog alerts that give rise to probable cause to search the whole vehicle and those that give rise to search only the passenger compartment of the vehicle. But our *Rosborough* decision explicitly noted the distinction drawn in *Seals* and rejected it. *See Rosborough*, 366 F.3d at 1153.

We affirm the district court's denial of Mr. Mendoza's motion to suppress.

**B.     Recusal of Judge**

Mr. Mendoza moved in district court that Judge Cassell be disqualified because of apparent bias against his attorney, D. Bruce Oliver. The district court denied the motion. Mr. Mendoza complains that Judge Cassell has referred

Mr. Oliver to a bar disciplinary board, published his order denying the motion to disqualify him in this case, and had a prior scholarly relationship with the prosecutor, although he courteously "concedes that [otherwise] the Judge has always conducted himself in a highly professional manner and accorded Mr. Oliver with due respect." Aplt. Br. at 49.

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." We have explained that "disqualification is appropriate only where a reasonable person, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *In re McCarthey*, 368 F.3d 1266, 1269 (10th Cir. 2004). We review for abuse of discretion the decision of Judge Cassell not to disqualify himself, *see United States v. Smith*, 997 F.2d 674, 681 (10th Cir. 1993); but we review for plain error whether he should have been disqualified on the basis of a personal relationship with the prosecutor, because this argument was not raised in the district court, *see United States v. Nickl*, 427 F.3d 1286, 1297-98 (10th Cir. 2005).

Judge Cassell did not abuse his discretion in declining to recuse himself. A judge should not be disqualified for faithfully performing the duties of his office. Unfavorable judicial rulings do not in themselves call into question the impartiality of a judge. *See Estate of Bishop v. Equinox Int'l Corp.*, 256 F.3d 1050, 1058 (10th Cir. 2002). Nor do referrals for disciplinary review. As Judge

Cassell well put it: "Judges are obligated to alert disciplinary authorities to possible unethical conduct by attorneys. Judges do not demonstrate possible bias or prejudice when they discharge that obligation." R. Vol. II at 247; *cf. In re Cooper*, 821 F.2d 833, 838 (1st Cir. 1987) ("Generally, clashes between court and counsel are an insufficient basis for disqualification."); *United States v. Cook*, 400 F.2d 877, 878 (4th Cir. 1968) (judge who sat in disciplinary hearing that led to suspension of original attorney was not disqualified); *Honneus v. United States*, 425 F. Supp. 164, 166 (D. Mass. 1977) ("[T]he fact that as a matter of public record a judge referred the in-court unprofessional conduct of an attorney to a Bar Association Grievance Committee, does not require him to recuse himself from hearing the post-conviction motions of the attorney's client, particularly where, as here, that attorney no longer represents the client.").

Mr. Oliver emphasizes, however, that Judge Cassell did not limit himself to reporting misconduct before him but also "conducted an extrajudicial investigation into Oliver's other cases from a docket search." Aplt. Br. at 49. We agree that such "extra effort" by a judge may suggest a vendetta. But that is not the situation here. Judge Cassell explained his actions as follows:

> Mr. Oliver's motion in this case related to actions the court took in *Spitler v. Ogden City*, a civil case that is unrelated to this matter.
>
> Mr. Oliver is counsel for plaintiff in *Spitler*. In a period of six months, the defendants in *Spitler* twice moved for sanctions — including dismissal — because of plaintiff's repeated failures to cooperate in discovery. The court did not dismiss the case, but

sanctioned Mr. Oliver because he admitted he "had some culpability for the creation of the circumstances at hand."

> *Spitler* was not the first time the court observed problems with Mr. Oliver's conduct. Combined with *Spitler*, these prior proceedings were enough, in the court's judgment, to trigger its obligation under Canon 3(B)(3) of the Code of Conduct for United States Judges to "initiate appropriate action when the judge becomes aware of reliable evidence indicating the likelihood of unprofessional conduct by a judge or a lawyer." Thus, the court performed a simple docket search of cases in the United States District Court for the District of Utah in which Mr. Oliver acted as counsel. The docket entries in a number of these cases — before the undersigned and other District of Utah judges — revealed what appeared to be numerous possible violations of Mr. Oliver's professional or ethical duties. The court culled these entries into a[n] order that it sealed and sent to the Utah State Bar Office of Professional Conduct and the District of Utah's Disciplinary Panel for further investigation."

R. Vol. II at 248-49 (internal brackets and footnotes omitted). In our view, no reasonable person, informed of these facts, would question Judge Cassell's impartiality in this case.

Mr. Mendoza's newly raised complaint regarding Judge Cassell's impartiality is based on a law-review article the judge wrote 13 years ago. A footnote in the article states: "I gratefully acknowledge helpful comments from . . . Veda Travis . . . ." Paul G. Cassell, *The Mysterious Creation of Search and Seizure Exclusionary Rules Under State Constitutions; The Utah Example*, 1993 Utah L. Rev. 751, 751 n.a (thanking 12 people and participants in a faculty colloquium). Ms. Travis was the prosecutor in this case. We consider whether it was plain error for Judge Cassell to preside in this case in light of this prior

-12-

"relationship" with Ms. Travis. For us to reverse for plain error, there must be "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzales-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc) (internal quotation marks omitted). We need not proceed beyond the first requirement, because there was no error here. The two-part test for whether a judge should disqualify himself because of a relationship with a lawyer is whether "the judge feels capable of disregarding the relationship and whether others can reasonably be expected to believe that the relationship is disregarded." *United States v. Murphy*, 768 F.2d 1518, 1537 (7th Cir. 1985) (quoting Interim Advisory Comm. on Judicial Activities, Advisory Op. 11 (1970)). All we have here is a 12-year-old expression of gratitude. This is far too tenuous a connection for a reasonable person to question Judge Cassell's impartiality. *See Singer v. Wadman*, 745 F.2d 606, 608 (10th Cir. 1984) (judge could preside over cases litigated by his former law partner).

### C. Breach of Plea Agreement

Mr. Mendoza claims that the government is barred from proceeding in a civil-forfeiture action against his vehicle. He argues that the government's effort to seek civil forfeiture breached the terms of his plea agreement. To prevail on this contention, he would have to overcome significant obstacles. He would need to establish that a prohibition on forfeiture was an implied term of his plea

agreement.  *See United States v. Scott*, 455 F.3d 1188, 1190 (10th Cir. 2006).

And he would need to establish that the alleged promise to refrain from forfeiting

the vehicle was a material inducement for his plea, *see id*. at 1191, despite the

contrary inference that can be drawn from his decision not to withdraw his plea

when he learned of the impending forfeiture.

The civil forfeiture, however, is not before us.  It is a separate case, with a

separate docket number, before a different district judge.  When the issue was

raised before Judge Cassell, he asked whether Mr. Mendoza wanted to have the

civil forfeiture consolidated with the criminal case, so that Judge Cassell could

rule on the matter; but Mr. Mendoza's counsel chose not to seek consolidation.

Accordingly, Judge Cassell issued no ruling regarding the propriety of civil

forfeiture.  How we would have jurisdiction over the civil forfeiture on this

criminal appeal is unclear to us.  Mr. Mendoza may pursue his challenge in the

civil case and appeal if he is not satisfied with the district court's decision.

### D.    Minor-Participant Reduction

In computing Mr. Mendoza's offense level under the Sentencing

Guidelines, the district court refused to give Mr. Mendoza a two-level reduction

as a minor participant.  Section 3B1.2(b) of the Guidelines states:  "If the

defendant was a minor participant in any criminal activity, decrease by 2 levels."

According to comment 3(A) to that section:

> [A] defendant who is convicted of a drug trafficking offense, whose role in that offense was limited to transporting or storing drugs and who is accountable . . . only for the quantity of drugs the defendant personally transported or stored is not precluded from consideration for an adjustment under this guideline.

Commentary to the Guidelines is authoritative unless it is inconsistent with the Constitution or federal statutes, or would lead to a plainly erroneous reading of the Guidelines. *See United States v. Salazar-Samaniega*, 361 F.3d 1271, 1275 (10th Cir. 2004).

> Mr. Mendoza argues as follows:

> The testimony of Agent Cox revealed that Mendoza was a mule. He was the driver, that extent of participation cannot be construed as anything more than minor participation. Also brought out at sentencing was the extent of his involvement in the proceeds. The Defendant received $5,000 per trip. The Government calculated that Mendoza was transporting 1.8 million dollars of street value methamphetamine. Certainly, Defendants [sic] involvement is no more than minor qualifying him for a two-step reduction.

Aplt. Br. at 53 (internal citations omitted). But the defendant has the burden to establish by a preponderance of the evidence that he was a minor participant. *See United States v. Onheiber*, 173 F.3d 1254, 1258 (10th Cir. 1999). And the district court is under no obligation to trust the defendant's "bare assertions." *See* USSG § 3B1.2, comment (n.3(C)); *Salazar-Samaniega*, 361 F.3d at 1278.

Mr. Mendoza was the registered owner of the vehicle transporting the drugs, and he admitted that he had made three drug-delivery trips. Moreover, there was testimony from a law-enforcement officer, who had reviewed recorded

telephone conversations of Mr. Mendoza while he was incarcerated, that strongly indicated that Mr. Mendoza was not fully disclosing his involvement. We hold that it was reasonable for the district court not to have been persuaded that Mr. Mendoza was a minor participant. *See Salazar-Samaniega*, 361 F.3d at 1278.

## III.    CONCLUSION

We AFFIRM the judgment below.