F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**March 27, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LUZ M. CRUCES, an individual,

     Plaintiff-Appellant,

v.

UTAH STATE VETERANS
NURSING HOME,

     Defendant-Appellee.

No. 06-4013
(D.C. No. 2:04-CV-410-PGC)
(Utah)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**TYMKOVICH,** Circuit Judge.

Plaintiff was an employee of the defendant. The defendant had a "no gossip"[1] rule

for its employees, which read as follows:

**Policy Statement**

The spreading of rumors and/or gossip shall be prohibited.

**Policy Interpretation and Implementation**

1. The spreading of rumors, falsehoods, gossip, etc., by

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] gossip (gosʹ əp)-idle talk or rumor, esp. about the private affairs of others.
*Random House Webster's College Dictionary*, 531 (2001).

personnel among employees, residents, and/or visitors is strictly prohibited.

2. Activities of this nature cast unfounded doubts and may cause harm to an individual. Our company will not condone such activities.

3. Department directors and supervisors should be alert to such activities and counsel employees about the company's position concerning gossip.

4. Violations of this policy can result in disciplinary action.

In 2002, during work hours and at the place of her employment, plaintiff confronted a female co-worker about a work place rumor that she, the co-worker, was having an "affair" with a male employee. The female co-worker was upset and immediately complained to her supervisor, who happened to be nearby at the time. The supervisor immediately confronted the plaintiff about the matter, and asked the plaintiff to reveal the source of her information, stating that the source of the information would be terminated. Plaintiff refused to reveal her source. The supervisor then stated to the plaintiff that unless she revealed her source, she, the supervisor, would assume that the plaintiff herself was the source of the rumor and that her employment would be terminated. Plaintiff declined to reveal her source, whereupon the supervisor terminated her employment "on the spot." The plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and ultimately was given a notice of right to sue.

Sometime later, in 2003, plaintiff inquired of the defendant whether she could

apply for re-employment, and she was informed that she was eligible to apply. Plaintiff filed an application for reemployment but she was not rehired. Plaintiff filed a charge with the EEOC based on defendant's failure to rehire her, and she was later given a right to sue letter.

In this general setting, Luz M. Cruces (the plaintiff), a citizen of the United States and a resident of Salt Lake County, Utah, a person of Hispanic descent, on May 3, 2004, filed the present action in the United States District Court for the District of Utah. Named as the defendant was "Traditions Health Care, Inc, d.b.a. Utah State Veterans Nursing Home." (It later developed that there is no such entity as "Utah State Veterans Nursing Home", and that such is an "assumed name that has been used by operators of the facility, including Traditions Health Care, Inc., the real party in interest." The identities of the parties to this present action are, however, a non-issue. The defendant will hereinafter be referred to as simply the defendant.)

Jurisdiction was based on Title VII of the Civil Rights Act of 1964, as amended, for "employment discrimination." 42 U.S.C. § 2000e-5. From the complaint we learn that the plaintiff was hired by the defendant as a certified nurse's assistant in May 1998, and was terminated from that employment on September 16, 2002. Plaintiff then recited the circumstances surrounding her discharge on September 16, 2002, and the defendant's failure to rehire her in August 2003. Plaintiff further alleged that the defendant's discharge of her in 2002, and its failure to rehire her in 2003, were based upon "race, color, religion, sex or national origin." By answer, the defendant admitted that it had

discharged plaintiff for having violated its "no gossip" employment policy, and, though admitting that plaintiff had contacted it in 2003 about the possibility of re-employment, denied that it had discriminated against her when it did not rehire her.

At the outset of our discussion, it should be emphasized that this is <u>not</u> a breach of contract action. Whether there was a valid contractual duty to refrain from "gossip" in the defendant's place of business, and, if so, whether the plaintiff violated that duty, is <u>not</u> an issue. Rather, plaintiff asserts two claims for relief based on Title VII of the Civil Rights Act of 1964, namely, that the defendant fired her in 2002 for "gossiping" because she was Hispanic, and that the district court later failed to rehire her in 2003 because she was Hispanic.

The defendant, after discovery, filed a motion for summary judgment, arguing that it had discharged the plaintiff because she had violated the company's "no-gossip" rule, and that there was no evidence of any sort that in discharging the plaintiff the defendant was "racially motivated." The affidavit of the supervisor who discharged plaintiff was attached to the motion. The plaintiff filed a response to defendant's motion for summary judgment and plaintiff's affidavit was attached thereto.

The district court in a rather detailed order consisting of some 11 pages granted defendant's motion for summary judgment. In so doing, the district court followed the rubric of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Specifically, the district court, based on the record before it, concluded that the defendant was a member of a protected class, was qualified for her job, was nonetheless discharged "under

circumstances which give rise to an inference of discrimination" and that she had thus made a "prima facie case of discrimination." However, the district court then went on to conclude that, in line with *McDonnell Douglas*, the defendant had offered a legitimate, nondiscriminatory reason for discharging the defendant, i.e., "gossip" in the work place in violation of a company rule, and that the plaintiff, in turn, had failed to thereafter show that the reason given by the defendant for her discharge was "pretextual." On that basis, the district court held that the plaintiff had failed to demonstrate that she had a Title VII claim based on her discharge in 2002, and granted summary judgment in favor of the defendant on plaintiff's claim of unlawful discharge.

As to plaintiff's claim based on the failure of the defendant to rehire her in 2003, and thereafter granting summary judgment on that claim, the district court spoke as follows:

> In the failure-to-hire context, a plaintiff must show that she applied for and that she was qualified for a job for which the employer was seeking applicants and the employer continued to seek applicants after rejecting the plaintiff's application. Here Ms. Cruces has alleged only that the Nursing Home's administrator told her that she could submit an application. Ms. Cruces has not alleged nor offered any evidence showing that the Nursing Home was seeking applicants at the time she submitted her application or that the Nursing Home continued to seek applicants after rejecting her application. Accordingly, the court concludes that Ms. Cruces has failed to offer sufficient evidence of pretext to survive the Nursing Home's motion for summary judgment.

Our review of a district court's grant of summary judgment is *de novo*, and in so doing, we apply the same legal standard as did the district court. *Harrison v. Eddy*

*Potash, Inc.*, 248 F.3d 1014 (10th Cir. 2001) and *State of Utah v. Babbitt,* 53 F.3d 1145 (10th Cir. 1995). Our review of the record before us in the present case leads us to the same conclusion as that reached by the district court. Namely, that the plaintiff failed to show that the reason given by the defendant for discharging plaintiff was pretextual and that, in fact, her discharge was motivated by her racial ethnicity. We also agree with the district court's disposition of plaintiff's claim based on appellant's failure to rehire her in 2003.

Several other matters raised by the plaintiff on appeal require some comment. After the district court entered an order granting summary judgment, plaintiff filed a motion for reconsideration, alleging that she had only recently received from the defendant a payroll list of its employees, and that after each name appeared either the initial "C," presumably indicating that the employee was "Caucasian," or "S," presumably indicating that the employee was "Hispanic," or "I," which presumably indicating that the employee was "Native American," or an "N."

The defendant filed a response to appellant's motion for reconsideration in which it asserted that the list in question was prepared by the defendant's employees on order of its attorneys in preparation for possible use at trial in order to show that defendant employed some 25 Hispanics, and further, that the letter "N" referred to "Negro." In that response, the defendant also stated that the list in fact had been given to the appellant prior to the time that the district court granted summary judgment.

The district court denied appellant's motion to reconsider, and under the described

circumstances, we find no error. As the district court observed, the fact that the defendant had some 25 employees who were Hispanic is significant when plaintiff's claim is based on supposed racial prejudice against her because she is Hispanic.

Another matter urged on appeal is that the judge erred in denying plaintiff's motion that he disqualify himself. In that matter, counsel for plaintiff stated that he believed the district judge had a "bias against me personally." In this regard, it would appear from counsel's affidavit that in another case where counsel for plaintiff in the present case was involved before the same judge, the latter had entered a "Sealed Order Referring D. Bruce Oliver to the State Bar's Office of Professional Conduct and the District of Utah's Disciplinary Panel." Other instances of alleged prejudice by the judge towards counsel were mentioned, such as instances of adverse rulings against his client, in this and other cases.

The district court before entering its order granting summary judgment denied plaintiff's motion to disqualify. In so doing, the district judge referred to *United States v. Mendoza,* a case which had previously been handled by him, wherein counsel for the plaintiff had filed a similar motion to disqualify him. On appeal in that case, this court in *United States v. Mendoza,* 468 F.3d 1256 (10th Cir. 2006), held that the district judge had not erred in refusing to disqualify himself. In so doing, we held that the trial judge had not abused his discretion in refusing to recuse because of his referral of the attorney's conduct to state disciplinary authorities. Based on our opinion in *Mendoza,* we conclude that in the instant case, the district court did not err in denying plaintiff's motion to

disqualify. In this regard, we should also note that our review of the district court's grant of summary judgment is *de novo*. In other words, we are not relying on the district court's reading of the record. We are making our own independent reading of the record.

Lastly, plaintiff asserts, on appeal, that the district court committed reversible error when it denied plaintiff's "Motion for New Scheduling Order." Some background is in order. The complaint in the instant case was filed on May 3, 2004. Defendant's answer was filed on July 20, 2004. On October 8, 2004, a magistrate entered a scheduling order. The magistrate entered an order which provided, *inter alia*, that "Fact Discovery" should be completed by the parties no later than March 25, 2005, and "Expert Discovery" should also be completed by March 25, 2005. The case was then set for trial on October 4, 2005.

On July 15, 2005, the plaintiff filed with the district court a Motion for New Scheduling Order, stating that both parties needed additional time to "Conduct Additional Discovery." Plaintiff asked for an extension to October 30, 2005, for both parties to complete their discovery and that the case be reset for trial on March 1, 2006. The plaintiff submitted a memorandum in support of its motion for rescheduling. On July 21, 2005, the district court denied plaintiff's Motion for New Scheduling Order, holding that the plaintiff had failed to "show good cause as to why discovery could not have been completed within the original time frame" or why the motion was "filed so far after the [original] cutoff date," which was March 25, 2005.

In its Motion for a New Scheduling Order filed on July 15, 2005, counsel did not give any indication as to why the parties had not complied with the discovery order

previously entered by the magistrate. In this regard, in a supporting memorandum, counsel simply stated that "The Parties Need Additional Time to Complete Discovery." In denying the plaintiff's "Motion for a New Scheduling Order," the district court stated that the plaintiff had failed to show "good cause" and noted that the motion had been filed nearly four months after the discovery cutoff date set by the magistrate, i.e. March 25, 2005.

Plaintiff's counsel in his brief recognizes that this court will not overturn a district court's exercise of its broad discretion to manage the scope of discovery absent "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances," citing *Kidd v. Taos Ski Valley, Inc.,* 88 F.3d 848, 853 (10th Cir. 1996). We agree. Under the described circumstances, we perceive of no such error by the district court when it denied plaintiff's "Motion for a New Scheduling Order." In this general connection, see also *Bolden v. City of Topeka, Kansas*, 441 F.3d 1129, 1149 (10th Cir. 2006).

Judgment affirmed.

Submitted for the court,

Robert H. McWilliams
Senior Circuit Judge