**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 8, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

JULIAN TRUJILLO MORALES,

    Defendant - Appellee.

No. 19-5059

———————————————————

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:19-CR-00066-CVE-1)**
———————————————————

Thomas E. Duncombe, Assistant United States Attorney, (R. Trent Shores, United States Attorney, with him on the briefs), United States Department of Justice, Tulsa, Oklahoma, for the Plaintiff – Appellant.

Barry L. Derryberry, Assistant Federal Public Defender (Julia L. O'Connell, Federal Public Defender, Barbara L. Woltz, Research and Writing Specialist, and William Widell, Assistant Federal Public Defenders, with him on the brief), Office of the Federal Public Defender, Tulsa, Oklahoma, for the Defendant – Appellee.

———————————————————

Before **TYMKOVICH**, Chief Judge, **BRISCOE**, and **MATHESON**, Circuit Judges.

———————————————————

**MATHESON**, Circuit Judge.

———————————————————

The district court granted Defendant-Appellee Julian Trujillo Morales's motion to suppress 4.11 kilograms of methamphetamine. The Government appeals.

Thirty-two minutes after he was stopped for a traffic violation, Mr. Morales and his passenger consented to an officer's search of the car that yielded the methamphetamine. During the first 10 minutes after the stop, the officer questioned Mr. Morales and developed reasonable suspicion of drug trafficking. He next questioned Mr. Morales's passenger for seven minutes and then called the El Paso Intelligence Center ("EPIC"), a national law enforcement database, which took another 15 minutes.

The district court said that the officer's actions were reasonable up to the EPIC call, but the EPIC call unreasonably prolonged the detention. Exercising jurisdiction under 18 U.S.C. § 3731, we reverse.

## I. BACKGROUND

### A. *Factual Background*[1]

1. **Initial Traffic Stop (Minutes 1 to 10)**

At around 1 a.m. on March 9, 2019, Officer Mitchell Phillips of the Pryor Police Department stopped a Toyota driven by Mr. Morales on an interstate highway for activating fog lamps in violation of 47 Okla. Stat. Ann. § 12-217.[2] Officer Phillips asked Mr. Morales and Victor Ybarra Robles, the sole passenger, for their driver's licenses and proof of insurance. When they produced the licenses but not proof of insurance, Officer Phillips told them he would search the Oklahoma Law Enforcement Telecommunications

---

[1] The factual background draws on Officer Phillips's testimony at the suppression hearing and his body camera video, cited as "Vid. at x:xx-xx."

[2] The Oklahoma statute provides that fog lamps "shall only be used when visibility . . . is limited to one-half (1/2) mile or less." 47 Okla. Stat. Ann. § 12-217(D)(1).

System ("OLETS") through his in-cruiser computer system. OLETS provides individuals' "address[es], descriptions, their driving license status, their names, identifiers, and occasionally if they have . . . warrants." App. at 133.

Officer Phillips brought Mr. Morales to the police cruiser for questioning and began running the OLETS search. Mr. Morales said that he and Mr. Robles owned a cleaning company and were driving to Springfield, Missouri for work. He provided inconsistent answers about whether he knew Mr. Robles beyond a first-name basis. Mr. Morales admitted to prior convictions for automobile burglary and possession of 116 kilograms of marijuana, Vid. at 3:23-54, and said he served a four-year federal sentence for the latter offense, *id.* at 5:36-50. He denied ever crossing the United States-Mexico border. *Id.* at 4:04-07. Officer Phillips said that Mr. Morales showed signs of "extreme nervousness," including "[h]eavy breathing" and "neck thumping." App. at 99.

The OLETS search yielded no insurance information, though it revealed that Yolanda Robles held the car's title and that Mr. Morales had no outstanding warrants. Officer Phillips exited his cruiser and returned to the Toyota to question Mr. Robles. At minute 10, Mr. Robles confirmed that his wife, Yolanda, owned the vehicle.

Officer Phillips testified that, by this point, he suspected Mr. Morales and Mr. Robles were engaged in illegal drug activity.

**2. Continued Detention Based on Suspicion of Drug Trafficking (Minutes 10 to 32)**

    a. *Further questioning of Mr. Robles (minutes 10 to 17)*

Mr. Robles told Officer Phillips that they were driving to Joplin, Missouri. He also provided a different name for their cleaning company. He admitted that he had "deal[t] drugs" in the past, Vid. at 10:18, and had been arrested for conspiracy to distribute three kilograms of cocaine, *id.* at 10:47-54. When asked if he had been to Mexico recently, Mr. Robles said he had been "in and out" of Mexico on Monday, and then corrected his answer to "Wednesday." *Id.* at 14:36-15:00. Officer Phillips returned to the police cruiser and briefly spoke with Mr. Morales.

    b. *Fifteen-minute EPIC call (minutes 17 to 32)*

Seventeen minutes into the encounter, Officer Phillips called EPIC, a national law enforcement database that provides information about border crossings and criminal history. *See* App. at 122-23. During the first three minutes of the call, he provided the men's identifying information to EPIC. Vid. at 17:30-20:26. After about an 8.5-minute wait, EPIC called back and spoke with Officer Phillips for three minutes. *Id.* at 28:58-31:48. He testified at the suppression hearing that EPIC provided information about Mr. Morales's and Mr. Robles's "criminal histories . . . [and] their recent crossings" that confirmed their prior answers. App. at 123-24 (explaining EPIC's information "wasn't anything [the men] didn't already tell [him]"). During the call, Officer Phillips retained the driver's licenses and did not otherwise speak to Mr. Morales.

4

3.  **Consent and Search (Post-Minute 32)**

Thirty-two minutes into the encounter, Officer Phillips returned the driver's licenses and said he "wasn't going to write any citations or warnings." Vid. at 32:05-09. He requested and obtained both men's consent to search the Toyota. The search uncovered four vacuum-sealed bags containing a total of 4.11 kilograms of methamphetamine. Officer Phillips then arrested both men.

B.  *Procedural Background*

Mr. Morales was charged with conspiracy and possession with intent to distribute methamphetamine. He moved to suppress the methamphetamine. He conceded the traffic stop was justified at its inception, but contended Officer Phillips's questions were unrelated to the stop and his actions impermissibly extended the stop.[3] After a pretrial conference and suppression hearing where Officer Phillips testified, the district court granted Mr. Morales's motion to suppress. *See United States v. Morales*, 2019 WL 2357364, at *11 (N. D. Okla. June 4, 2019).

The court determined the initial traffic stop was valid and complete when Mr. Robles confirmed his wife owned the car. *Id.* at *5-6. It also held that Officer Phillips developed reasonable suspicion of drug trafficking while conducting the traffic stop, which justified the continued detention. *Id.* at *8.[4] Next, it considered the continued

---

[3] Mr. Robles did not join the motion to suppress. *See* Dist. Ct. Doc. 31 at 1.

[4] The court explained that the reasonable suspicion was "[b]ased on the totality of the circumstances—specifically, [Mr. Morales's] extreme nervousness, his prior conviction for drug trafficking, and his vague and internally inconsistent responses," and

detention's "length and scope." *Id.* at \*8-9. The court held that Officer Phillips's further questioning of Mr. Robles was reasonable, but the 15-minute call to EPIC was an "unreasonable delay." *Id.* at \*9-10.

Despite Officer Phillips's testimony that he called EPIC "to look up [their] border crossing information and probationary statuses," the court found that he "failed to explain why it was necessary to [further] detain defendant in order to obtain that information" or "the impact that information would have." *Id.* at \*10. Because Mr. Robles already had admitted to recently crossing the United States-Mexico border, the court reasoned that any "additional information regarding border crossings . . . would have neither dispelled nor confirmed [Officer Phillips's] heightened reasonable suspicion of drug trafficking." *Id.* It noted that the OLETS check showed Mr. Morales and Mr. Robles lacked outstanding warrants for probationary violations, and "[t]o the extent [Officer] Phillips believe[d] that OLETS provide[d] inaccurate or incomplete warrant information, [he] could have run the EPIC check at any point." *Id.* Further, "[a]side from briefly looking for his warning book," Officer Phillips did "not conduct[] any other tasks" during the call and "did not speak to [the] defendant." *Id.* The court thus granted Mr. Morales's motion to suppress. *Id.* at \*11.

The Government timely filed an interlocutory appeal.

---

on Mr. Robles's answers that "continued to contradict [Mr. Morales's] answers" regarding their destination and relationship. *Morales*, 2019 WL 2357364, at \*8-9.

## II. DISCUSSION

### A. *Standard of Review*

"When reviewing a district court's decision to grant a motion to suppress, this court reviews factual findings for clear error and legal determinations de novo." *United States v. Easley*, 911 F.3d 1074, 1079 (10th Cir. 2018). "For factual findings, this court views the evidence in the light most favorable to the district court's decision." *Id.* "A district court's factual finding is clearly erroneous when it is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." *United States v. Cash*, 733 F.3d 1264, 1273 (10th Cir. 2013) (quotations omitted). "The ultimate determination of reasonableness under the Fourth Amendment . . . is a question of law reviewed de novo." *Id.* (quotations omitted).

### B. *Legal Background*

On appeal, the parties contest only the validity of Mr. Morales's continued detention during Officer Phillips's 15-minute call to EPIC. The following addresses (1) an initial traffic stop and (2) the scope and duration limitations on continued detention based on reasonable suspicion of illegality.

#### 1. **Initial Traffic Stop**

"A traffic stop is a seizure within the meaning of the Fourth Amendment," and "[w]e . . . analyze such stops under the principles pertaining to investigative detentions set forth in *Terry v. Ohio*, 392 U.S. 1 [(1968)]." *United States v. Botero-Ospina*, 71 F.3d

7

783, 786 (10th Cir. 1995) (*en banc*).[5] "When evaluating the reasonableness of a traffic stop, we ask first whether the officer's action was justified at its inception, then second whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Cash*, 733 F.3d at 1273 (quotations omitted).

The first prong of the *Terry* analysis is satisfied "if the officer has . . . a reasonable articulable suspicion that this particular motorist violated . . . applicable traffic . . . regulations." *United States v. Salas*, 756 F.3d 1196, 1200-01 (10th Cir. 2014) (quotations omitted). "[T]he second prong . . . circumscribes the permissible scope of an investigative detention," *Botero-Ospina*, 71 F.3d at 788,[6] and requires examining both "the length and scope of a traffic stop," *United States v. Holt*, 264 F.3d 1215, 1227, 1229 (10th Cir. 2001) (*en banc*) (explaining "there are limitations on both the length of the

---

[5] *Accord Whren v. United States*, 517 U.S. 806, 810 (1996) ("An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances."). The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const. amend. IV, and is "enforceable against the States through the Fourteenth [Amendment]," *Colorado v. Bannister*, 449 U.S. 1, 2 (1980) (per curiam).

[6] An officer's purpose during a traffic stop is "to address the traffic violation that warranted the stop *and attend to related safety concerns*." *United States v. Mayville*, 955 F.3d 825, 830 (10th Cir. 2020) (quotations omitted). This limits the officer to "ordinary inquiries incident to the traffic stop, which typically involve inspecting the driver's license, verifying the vehicle's registration and insurance coverage, and checking for any outstanding warrants," and "negligibly burdensome inquiries" in the interest of officer safety, including "criminal-history checks." *Id.* (quotations omitted).
But "[a]n officer may also question the driver about matters both related and unrelated to the purpose of the stop, as long as those questions do not prolong the length of the detention." *United States v. Davis*, 636 F.3d 1281, 1290 (10th Cir. 2011) (quotations omitted).

8

detention and the manner in which it is carried out . . . [also] refer[red] to here as the 'scope' or 'breadth' of the detention"), *abrogated on other grounds as recognized in United States v. Stewar*t, 473 F.3d 1265, 1269 (10th Cir. 2007).[7]

## 2. **Continued Detention Based on Reasonable Suspicion of Illegality**

"[O]nce an officer returns the driver's license and registration, the traffic stop has ended and questioning must cease; at that point, the driver must be free to leave." *United States v. Moore*, 795 F.3d 1224, 1229 (10th Cir. 2015) (quotations and alterations omitted). "But an officer may detain a driver beyond the scope of the traffic stop if, during the stop, (1) the officer develops an objectively reasonable and articulable suspicion that the driver is engaged in some illegal activity, or (2) the initial detention becomes a consensual encounter." *United States v. Davis*, 636 F.3d 1281, 1290 (10th Cir. 2011) (quotations omitted); *see also United States v. Wood*, 106 F.3d 942, 946 (10th Cir. 1997) (explaining "the scope or duration of an investigative detention may be expanded beyond its initial purpose" only in these two circumstances).

When the government claims that reasonable suspicion supported the continued detention, "we consider the detention as a whole and the touchstone of our inquiry is reasonableness." *Cash*, 733 F.3d at 1276 (quotations omitted); *accord United States v. Mayville*, 955 F.3d 825, 827 (10th Cir. 2020) ("Reasonableness—rather than efficiency—

---

[7] *Accord Illinois v. McArthur*, 531 U.S. 326, 331 (2001) (requiring the temporary detention to be "limited in time and scope"); *United States v. Hensley*, 469 U.S. 221, 235 (1985) (stating courts must ask whether the circumstances "justified the length and intrusiveness of the stop and detention that actually occurred").

is the touchstone of the Fourth Amendment.").  Like the original traffic stop, the further detention's duration "must be temporary and last no longer than is necessary to effectuate the purpose of either dispelling or confirming the officer's reasonable suspicion."  *United States v. White*, 584 F.3d 935, 954 (10th Cir. 2009) (quotations omitted).  In assessing duration, we ask whether the police "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly," but we "do not impose a rigid time limit."  *United States v. Paetsch*, 782 F.3d 1162, 1175-76 (10th Cir. 2015) (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)).  And like the original traffic stop, "the scope of the further detention must be carefully tailored to its underlying justification."  *United States v. Wilson*, 96 F. App'x 640, 644 (10th Cir. 2004) (unpublished) (alterations omitted) (quoting *Wood*, 106 F.3d at 945).[8]

"Reasonable suspicion is an objective standard," and we "inquire[], based on the totality of circumstances, whether the facts available to the detaining officer, at the time, warranted an officer of reasonable caution in believing the action taken was appropriate."  *Cash*, 733 F.3d at 1273 (quotations omitted).  The Court has "consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry."  *Ohio v. Robinette*, 519 U.S. 33, 39 (1996).

---

[8] Although not precedential, we find the reasoning of this unpublished opinion instructive.  *See* 10th Cir. R. 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value."); *see also* Fed. R. App. P. 32.1.

C. *Analysis*

On appeal, the Government contends "the district court erred in holding that the fifteen-minute EPIC database check rendered an otherwise reasonable traffic stop unconstitutional." Aplt. Br. at 18. Mr. Morales argues the district court's determination was proper. *See* Aplee. Br. at 7. He does not dispute the district court's other rulings that (1) the initial traffic stop was valid,[9] (2) Officer Phillips developed a reasonable suspicion of drug trafficking that justified further detention, or (3) the continued detention before the call to EPIC was valid. *See id.* at 2-4.

The parties' dispute is thus narrowly limited to the district court's determination that Officer Phillips's 15-minute call to EPIC unreasonably prolonged the stop. *See Morales*, 2019 WL 2357364, at *10. Based on the facts of this case, we reverse and remand.

### 1. The 15-Minute EPIC Call was Reasonable

Officer Phillips's 15-minute EPIC call did not impermissibly exceed the scope or duration requirements for an investigative detention.

a. *Scope*

"[T]he scope of the further detention" was "carefully tailored to its underlying justification." *Wilson*, 96 F. App'x at 644 (alterations omitted). Mr. Morales does not dispute that EPIC provides information on criminal history and border crossings, which

---

[9] We agree that the traffic stop was valid based on Officer Phillips's reasonable suspicion that Mr. Morales violated Okla. Stat. Ann. § 12-217. *See Salas*, 756 F.3d at 1200-01.

we have found relevant to an officer's drug trafficking suspicions. *See, e.g. United States v. Santos*, 403 F.3d 1120, 1132-33 (10th Cir. 2005) ("[I]n conjunction with other factors, criminal history contributes powerfully to the reasonable suspicion calculus [of drug trafficking]"); *United States v. Gandara-Salinas*, 327 F.3d 1127, 1131 (10th Cir. 2003) (the officer's knowledge that the defendant's "vehicle had crossed the [United States-Mexican] border the previous day" contributed to the officer's reasonable suspicion of drug trafficking).

The EPIC call could have (1) added information that OLETS did not contain and (2) confirmed or dispelled the information already provided by Mr. Morales and Mr. Robles. Officer Phillips explained that EPIC provides more detailed information on border crossings than OLETS, including "where [individuals] started their travel, . . . [t]he border they crossed, the times, [and] what part of the border they crossed through." App. at 123-24. He also stated that EPIC provides more complete probationary status and warrant information that "[doesn't] necessarily always show up on OLETS." *Id.* at 122-23; *see also id.* at 133 (OLETS only "occasionally" brought up warrants); *id.* at 123 (OLETS provided "warrants, if they're entered, and sometimes probation notifications"). The district court "[found] that Officer Phillips's testimony [was] credible," *Morales*, 2019 WL 2357364, at *5, and Mr. Morales does not contest this testimony on appeal.

EPIC could further verify or supplement the statements that Mr. Morales and Mr. Robles made about their criminal histories and recent border crossings. *See Michigan v. Summers*, 452 U.S. 692, 700 n.12 (1981) (explaining that an officer may use "several investigative techniques . . . in the course of a *Terry*-type stop," including

12

"communicat[ing] with others, either police or private citizens, in an effort to verify the explanation tendered" (quoting 3 Wayne R. LaFave, Search and Seizure § 9.2, 36-37 (1978)).  Although the two men's admissions may have been against interest, Officer Phillips took reasonable steps to determine whether they were fully candid.  As the district court noted, Officer Phillips's suspicion of drug trafficking was reasonably based on Mr. Morales's "internally inconsistent responses" and contradictions with Mr. Robles's answers about their asserted destination and travel plans.  *Morales*, 2019 WL 2357364, at *8-9; *see also Davis*, 636 F.3d at 1291 (explaining that "factors that may contribute to an officer's reasonable suspicion of illegal activity justifying detention . . . [include] an individual's internally inconsistent statements or the inconsistencies between a passenger and driver's statements regarding travel plans").  Officer Phillips thus had good reason to not take their statements at face value.  Even though the EPIC search confirmed the answers Mr. Morales and Mr. Robles provided, we evaluate reasonable suspicion based on what the officer knew "at the time" the action was taken.  *Cash*, 733 F.3d at 1273 (quotations omitted).

     b.  *Duration*

     The EPIC call "last[ed] no longer than . . . necessary to effectuate the purpose of either dispelling or confirming [Officer Phillips's] reasonable suspicion" of drug trafficking.  *White*, 584 F.3d at 954 (quotations omitted).  It was a "diligent[] . . . means

13

of investigation that was likely to confirm or dispel [Officer Phillips's] suspicions [of drug trafficking] quickly." *Paetsch*, 782 F.3d at 1175-76 (quotations omitted).[10]

Our case law supports continued detention during an officer's diligent efforts to verify or supplement information after developing reasonable suspicion of illegality. For example, in *United States v. Soto-Cervantes*, 138 F.3d 1319 (10th Cir. 1998), officers developed reasonable suspicion that the defendant was an illegal alien after viewing the defendant's alien registration card during an initial stop on suspicion of drug trafficking. *Id.* at 1321, 1323-24. We upheld the 42-minute detention beyond the traffic stop-related detention while officers awaited the arrival of an Immigration and Naturalization Service agent to verify the defendant's alien registration status. *Id.* In *Cash*, an officer, having viewed the defendant's bladder device during the initial traffic stop, developed reasonable suspicion that the defendant was on his way to cheat on his urine drug test. 733 F.3d at 1274. We approved the 13-minute continued detention while the officer called the defendant's probation officer to the scene. *Id.* at 1276. Finally, we upheld continued detention for an officer to attempt to confirm a defendant's information with multiple databases. *See, e.g.*, *United States v. Fonseca*, 744 F.3d 674, 678 (10th

---

[10] On appeal, Mr. Morales contends we should defer to the district court's "factual" conclusion that the EPIC database's additional border crossing information "would not lead to information that would have dispelled or confirmed the officer's reasonable suspicion . . . ." Aplee. Br. at 13; *see Morales*, 2019 WL 2357364, at *10. Without deciding whether the district court's determination was legal or factual, we conclude that, even if factual, the court's conclusion was "clearly erroneous" because it was "without factual support in the record." *Cash*, 733 F.3d at 1273 (quotations omitted).

Cir. 2014) (upholding officer's actions as reasonable in calling dispatch to check that defendant had a current warrant, and "ask[ing] dispatch to obtain confirmation from the agency that issued the warrant").[11]

## 2. Mr. Morales's Counterarguments Are Unavailing

Mr. Morales contends Officer Phillips's actions were unreasonable because the officer testified that he had decided to ask for consent to search seven minutes into the encounter but delayed asking for another 25 minutes. *See* Aplee. Br. at 14-15, 26 (arguing Officer Phillips's "actions did not match his stated intent" and were thus unreasonable). But "[r]easonable suspicion is an objective standard," *Cash*, 733 F.3d at 1273, and "the officer's subjective motives are irrelevant," *White*, 584 F.3d at 945 (quotations omitted). The facts available to Officer Phillips warranted a reasonable officer's belief that the EPIC call was a proper and diligent means of investigation.

Mr. Morales also argues the district court correctly distinguished this case from *United States v. Marquez-Diaz*, 325 F. App'x 637 (10th Cir. 2009) (unpublished). *See* Aplee. Br. at 21. In that case, while an EPIC check was pending, the officer continued questioning the defendant about inconsistencies between his and the passenger's

---

[11] In an analogous context, our case law supports an officer's detaining a "Defendant for no longer than was necessary to call a drug dog to the scene and to thus quickly confirm or dispel his reasonable suspicion" by a "diligent[] . . . means of investigation." *United States v. Kopp*, 45 F.3d 1450, 1454 n.1 (10th Cir. 1995) (quotations omitted). *See, e.g.*, *United States v. Mendoza*, 468 F.3d 1256, 1261 (10th Cir. 2006) (where trooper and dog handler who was far away were diligent in bringing drug-sniffing dog to the scene, additional 40-minute detention spent waiting for the dog to arrive was reasonable); *United States v. Orozco-Rivas*, 2020 WL 1922360, at *7 (10th Cir. Apr. 21, 2020) (unpublished) (same for additional 51-minute detention).

statements, returned the defendant's driver's license, issued a warning ticket, and received the defendant's consent to search the car. *Id.* at 640-41.

The district court noted that the officer in *Marquez-Diaz* "continued to perform actions that were reasonably related to the further detention." *Morales*, 2019 WL 2357364, at *10 n.3. It pointed to, by contrast, Officer Phillips's failure to conduct tasks advancing his investigation during the EPIC call. *See id.* at *10. But the touchstone of the Fourth Amendment is "[r]easonableness—rather than efficiency." *Mayville*, 955 F.3d at 827. Officer Phillips's call to EPIC was a diligent means to investigate, and the length of the call—including an 8.5-minute hold by EPIC—was reasonable. As in the analogous drug-sniffing dog context, the length of a continued detention is not unreasonable when the police act diligently.[12]

## III. **CONCLUSION**

The district court erred in granting Mr. Morales's motion to suppress. We reverse and remand for proceedings consistent with this opinion.

---

[12] *See, e.g.*, *Mendoza*, 468 F.3d at 1261; *Orozco-Rivas*, 2020 WL 1922360, at *7.